[No. H005389. Sixth Dist. Apr. 20, 1989.]

STATE FARM FIRE and CASUALTY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY,
Respondent;
LYNN C. BOLEK et al., Real Parties in Interest.

COUNSEL

Clarke B. Holland, Thornton, Taylor & Downs, Weldon S. Wood and Robinson & Wood for Petitioner.

No appearance for Respondent.

Robert Jay Katz and Lisa Jeong Cummins for Real Parties in Interest.

## OPINION

**CAPACCIOLI, J.**—Petitioner State Farm Fire and Casualty Company (State Farm) seeks a writ of mandate pursuant to Code of Civil Procedure section 437c, subdivision (*l*), to compel the trial court to order entry of summary judgment in its favor based on the one-year period of limitations in the insurance policies which it issued to real parties in interest (collectively Bolek.) For reasons we shall state, we hold that summary judgment should have been granted.

### RECORD

State Farm at different times issued three homeowners' policies to Bolek. Each contained this limitations provision: "No *action* shall be brought unless there has been compliance with the policy provisions and the action

is started within one year after *the occurrence* causing loss or damage." Insurance Code section 2071 authorizes inclusion of the following limitations provisions in standard form fire insurance policies: "No *suit or action on this policy* for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with, and unless commenced within 12 months next after *inception of the loss.*" In each quotation, italics is added and illustrates the pertinent differences in wording between the policy provisions and the statute.

Denying summary judgment, the trial court stated that State Farm's limitations provision was broader than authorized by the statute and therefore void. The court said in its letter ruling that the policy language applied the policy's statute of limitations to all actions, whether or not brought on the policy, because of the language quoted above saying that "No action shall be brought" unless it is timely within the policy provisions. The court found that such a broad statute of limitations violated the statute (Ins. Code, § 2071) which only authorized the policy statute of limitations to bar actions on the policy.

The undisputed facts developed on the summary judgment motion are as follows: the Boleks purchased their house in October 1980. They first noticed cracking and settling of the house in the fall and winter of 1982. When they bought the home they purchased a homeowners' policy from State Farm. In May of 1983 they also purchased earthquake insurance from another insurer.

In May of 1985 they contacted their State Farm agent, Jim Flynn, because they were concerned about the structural problems with the home. He suggested they have the property inspected, which they did, in July 1985. "Until we saw the report we were not aware of the cause or significance of our problems." They made claims for structural loss damage both to State Farm, on August 8, 1985, and also to the earthquake insurer, Central National Ins. Company, in September 1985. On September 27, 1985, the Boleks filed suit against third parties with respect to the same damages which were the subject of their claim. But they did not then sue State Farm.

State Farm denied coverage of the claim by letter received January 24, 1986. The Boleks wrote to State Farm and requested reconsideration. State Farm reconfirmed its denial of the claim on February 21, 1986.

The Boleks filed suit against State Farm on March 30, 1987. Based on these undisputed facts, it appears that suit was filed more than one year after (a) occurrence of the loss (b) awareness of the loss and (c) denial of the claim by State Farm.

## DISCUSSION

Two recent insurance cases hold that the one-year policy period of limitations is enforceable. (*Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530 [252 Cal.Rptr. 565], review den.; *Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 [251 Cal.Rptr. 319].) The *Abari* decision affirmed a dismissal based on the insured's failure to file suit within the policy period of one year of discovery of the loss. The decision states that the insured's "belated discovery . . . that his homeowners' policy might afford coverage is without import. 'It is the occurrence of some . . . cognizable event rather than knowledge of its legal significance that starts the running of the statute of limitations.'" (*Abari, supra,* at p. 535, citing *McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 804 [159 Cal.Rptr. 86].) The insured, Abari, admitted knowledge of the damage to his house in 1979, but did not file suit until 1985. The court noted the action was barred both by the one-year period in the policy and also by the four-year statute for breach of contract, Code of Civil Procedure section 337. (*Id.,* at p. 535, text and note fn. 3.) The court cited *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 832 [195 Cal.Rptr. 421] for the rule that a cause of action accrues "when the plaintiff discovers or *should have discovered* all facts essential to the cause of action." (205 Cal.App.3d at p. 535.)

Similarly in *Lawrence, supra,* the court affirmed summary judgment for the insurer based on the insurance policy's one year contractual limitation on the filing of an action. (That claim was also barred by failure to observe the 60-day notice of loss requirement.) The damage occurred in 1983; in 1985 the insured consulted an attorney and learned of the possibility of coverage. He filed the lawsuit in 1986. The court held that the cause accrued, not when Lawrence learned that the loss might be insured, but rather when he learned of the loss itself. (*Lawrence, supra,* 204 Cal.App.3d at p. 572.) Nor was the period tolled because of Lawrence's claim that the engineering report he received was technical and unintelligible to him. The court pointed out he could have learned the practical meaning of the report from the engineer he hired to prepare it. (*Ibid.,* fn. 3.) The *Lawrence* court affirmed the same doctrine relied on in *Abari, supra,* and in *McGee* v. *Weinberg, supra*: ignorance of legal remedy does not toll the statute of limitations. (204 Cal.App.3d at p. 573.) The court said that if Lawrence's argument for tolling were accepted, "the practical effect would be to nullify

the contractual one-year commencement of suit provisions. 'Any plaintiff could simply allege ignorance of his or her legal rights against a particular defendant. This is not difficult. Most people do not know the legal answers to questions arising from certain circumstances.'" (*Id.,* at p. 573, citing *McGee* v. *Weinberg, supra,* 97 Cal.App.3d at p. 804.) Finally, the *Lawrence* court ruled that the insurer was not equitably estopped to assert the limitations bar because of either fraudulent concealment, fiduciary breach, or misrepresentation. The insurer's failure to advise Lawrence of the concurrent cause theory was not a basis for estoppel. (*Id.* at p. 573) "An insurer is under no obligation to explain to the insured all possible legal theories of recovery." (*Id.,* at p. 574.)

In addition to *Abari* and *Lawrence,* a case more than 40 years old holds that the insured's cause of action accrues at the latest upon the date of unconditional denial, and concealment of legal rights will not toll the period. (*Neff* v. *New York Life Ins. Co.* (1947) 30 Cal.2d 165, 170, 172 [180 P.2d 900, 171 A.L.R. 563].)

Further, the *Lawrence* court held it makes no difference whether the limitations provision in question is statutory or contractual. (*Lawrence, supra,* 204 Cal.App.3d at p. 573.) Not only, as the *Lawrence* court observed, is there no fundamental difference between the two, but also, the one-year policy period of limitations in insurance contracts is specifically authorized by statute. (Ins. Code, § 2071.)

The *Abari* and *Lawrence* decisions, in addition to refusing to toll contractual limitations periods on account of failure to explain legal theories of coverage, also hold the respective insureds are barred from proceeding on the claims for alleged tortious bad faith in handling the claim or related causes based on the manner of processing of the claim. In *Lawrence,* the court said the gravamen of the lawsuit was complete denial of the claim, and therefore the action could not be said to be based on acts subsequent to the denial. (204 Cal.App.3d at p. 575, distinguishing *Frazier* v. *Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90, 104 [214 Cal.Rptr. 883], and *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 48-49 [147 Cal.Rptr. 565], both of which involved tort claims which were not claims on the policy but arose out of later activities of the insurer.) The *Lawrence* court said that "Lawrence's cause of action for bad faith in purportedly misrepresenting the scope of coverage in the policy is fundamentally a claim on the policy and is thus time barred." (*Id.,* at p. 575.) Similarly in *Abari,* the court referred to the lawsuit as a "transparent attempt to recover *on the policy* . . . ." (*Abari, supra,* 205 Cal.App.3d at p. 536.)

■ There is no authority for the trial court's belief that the differences in language between the policy period of limitations and Insurance Code section 2071 should lead to excising the provision from the policy. If the provision were indeed inconsistent with the statute, the remedy would be to enforce the provision consistent with the governing statute. (*Cal-Farm Ins. Companies* v. *Fireman's Fund American Ins. Companies* (1972) 25 Cal.App.3d 1063, 1069 [102 Cal.Rptr. 568]; *Truck Ins. Exch.* v. *Wilshire Ins. Co.* (1970) 8 Cal.App.3d 553, 559 [87 Cal.Rptr. 604].) The insureds say that the *Cal-Farm* and *Truck Ins. Exchange* cases were decisions modifying the policy language to find that coverage *existed,* and that they therefore do not apply here; but these decisions do not so restrict the application of their general principle that the parties' contract should be saved from the stigma of illegality and the unintended result of unenforceability whenever possible.

■ But we find that there is no inconsistency provided one does not read the policy provision as applying to actions unrelated to matters covered by the policy. Clearly "no action shall be brought" must mean no action *on the policy*; State Farm does not contend otherwise. And the differences between "occurrence" and "inception of the loss" are trivial; if anything, as State Farm argues, the policy provision is an improvement in the direction of plain English. The insureds here cannot identify any prejudice to their rights arising out of these inconsequential differences in language such as could possibly justify wholesale excision of the provisions from the policies.

The precise limitation provision in controversy was approved and enforced in a federal decision which paid no attention to the differences in wording from the statute. (*Becker* v. *State Farm Fire and Cas. Co.* (N.D.Cal. 1987) 664 F.Supp. 460, 461.) The insureds seek to distinguish *Becker* because first, the primary issue there was the insurer's waiver of the provision, and second, the decision is not binding on us. Those facts conceded, the decision nevertheless indicates that at least one judge did not blanch at the sight of the departures from Insurance Code section 2071.

The insureds argue that State Farm did not raise in the trial court the argument that the limitation provision should be amended to conform to the statutory requirement rather than excised, and that its proper remedy was a petition for reconsideration rather than a petition for mandate here. ■ Where an argument requires resolution of factual issues it must be raised in the trial court first, but here the issue is one of law based on construction of the statutory language and application of the precedent. Also, the statute authorizing mandate review, Code of Civil Procedure

section 437c, subdivision (*l*), does not require a motion for reconsideration to be made before seeking mandate review, and there is authority that the making of such a motion would not toll the time period prescribed by subdivision (*l*) for seeking writ review. (*Schmidt* v. *Superior Court* (1989) 207 Cal.App.3d 56, 61 [254 Cal.Rptr. 827].) ■ For us to remand for the trial court to reconsider the matter in light of State Farm's newly raised theory would be a time-wasting procedure. Any prejudice resulting from State Farm's failure to raise the theory below has been amply obviated by the insureds' opportunity to oppose the argument here.

The insureds also argue that the change of the policy language from "inception of the loss" to "occurrence" tends to mislead the insured and was an attempt to evade the rule of an appellate decision holding that the one-year period is tolled to give the insured a reasonable opportunity to comply with the conditions precedent to suit. (*Zurn Engineers* v. *Eagle Star Ins. Co.* (1976) 61 Cal.App.3d 493 [132 Cal.Rptr. 206].) This argument is unavailing here because, first, there is no evidence the insureds did not have a reasonable opportunity to bring suit nor that they were misled by the specific use of the term "occurrence" rather than "inception of loss." Indeed they admit that they knew that State Farm stood firm on its denial on February 21, 1986, yet they did not sue until March 30, 1987, not because they were misled, but because they were waiting for the results of their coverage request to another carrier. There is no precedent tolling the limitations provision of an insurance policy pending the outcome of a coverage dispute with a different entity. ■ Second, there is no rule that an insurer may not stand on its policy language because its "motive" in drafting that language was to "evade" an appellate decision. Presumably lawyers draft contracts all the time attempting to "evade," or "avoid" the effect of particular decisions. So long as the policy does not violate the law such practice has no effect on the enforceability of the contract. Presumably the client hires the lawyer to draft a document maximally to the client's advantage. There is nothing sinister in such self-interest.

■ State Farm also points out that the statute establishes the terms of a standard form *fire* insurance policy in California, whereas here we deal with earth movement, settling and cracking of the structure, not fire. (See Ins. Code, § 2070 requiring observance of the minimum dictates of the standard form "with respect to the peril of fire.") However, we need not reach this argument since clearly the provision can be read consistently with the statute and is enforceable as a one-year period of limitations identical to those enforced in *Abari, supra, Lawrence, supra,* and *Becker, supra.*

There is no evidence in the record that the Boleks were misled by State Farm into delaying suit so as to form the basis for an estoppel argument.

The letter which they wrote to State Farm dated February 12, 1986, seeking reconsideration of the claim, says they consulted a lawyer and knew they were covered for the loss. They not only knew all the material facts underlying the loss, a sufficient condition to invoke the statute of limitations, but they also knew of their legal rights. There can be no basis for an estoppel on this record.

■ Regarding prejudice, no California decision requires a showing of prejudice to enforce a statute of limitations. "Nothing more than the mere passage of time is required for the statute of limitations to bar an action at law." (30 Cal.Jur.3d Equity, § 39, p. 538, fn. 51, and cases there cited, e.g., *Cahill* v. *Superior Court* (1904) 145 Cal. 42, 47 [78 P. 467].) *Lawrence, supra,* says a showing of prejudice is required in the context of the notice of claim provision, which covers a shorter period and has a different function than a statute of limitations. The courts require no showing of prejudice to enforce a statute of limitations, in insurance cases or otherwise. "A failure to abide by the limitation of action condition in a policy stands on a much different footing than a non-compliance with the notice provisions. As previously explained, the main purpose underlying the notice stipulations is to safeguard the insurer from prejudice in processing a claim. Therefore, where an insurer's interests have not been harmed by a late notice, the reason for the notice condition is lacking. ■ By contrast, limitation periods on suits are designed to promote justice by preventing surprises through revival of stale claims, to protect defendants and courts from handling matters in which the search for truth may be impaired by loss of evidence, to encourage plaintiffs to use reasonable and proper diligence in enforcing their rights, and to prevent fraud." (*Zieba* v. *Middlesex Mut. Assur. Co.* (D.Conn. 1982) 549 F.Supp. 1318, 1321; *United States* v. *Kubrick* (1979) 444 U.S. 111, 117 [62 L.Ed.2d 259, 266, 100 S.Ct. 352]. See also *Brandywine One Hundred Corp.* v. *Hartford F. Ins. Co.* (D.Del. 1975) 405 F.Supp. 147, 151.)

Statutes of limitations are upheld regardless of hardship or of the underlying merits of the claim. The occasional loss of a meritorious claim is the legislatively prescribed price to be paid for "the orderly and timely processing of litigation." (*Sanchez* v. *South Hoover Hosptial* (1976) 18 Cal.3d 93, 103 [132 Cal.Rptr. 657, 553 P.2d 1129].)

■ Accordingly we hold that a writ of mandate must issue granting summary judgment to petitioner.

## DISPOSITION

Real parties in interest have been notified that a peremptory writ in the first instance could be issued here, and have filed opposition. The perempto-

ry writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue directing the respondent court to vacate its order denying summary judgment to petitioner and to make a new and different order entering summary judgment in favor of petitioner as prayed. As prevailing party, State Farm shall have costs in this proceeding.

Brauer, Acting P. J., and Premo, J., concurred.