[No. A061365. First Dist., Div. Three. Dec. 29, 1994.]

LARKSPUR ISLE CONDOMINIUM OWNERS' ASSOCIATION, INC., Plaintiff and Respondent, v.
FARMERS INSURANCE GROUP et al., Defendants and Appellants.

**COUNSEL**

Thornton, Taylor, Downs, Becker, Tolson & Doherty, Clarke B. Holland and Michael F. Scully for Defendants and Appellants.

Richard A. Vinson for Plaintiff and Respondent.

## OPINION

**CORRIGAN, J.**—Farmers Insurance Group and its member company Truck Insurance Exchange (collectively Truck) appeal from a judgment on a jury verdict against Truck and in favor of Larkspur Isle Condominium Owners' Association, Inc. (LICOA) in an action for breach of a property insurance policy. Truck contends it had no liability under the policy as a matter of law, because the loss for which LICOA made its claim manifested itself prior to the beginning of Truck's policy period. We agree and therefore reverse the judgment.

### FACTS

Larkspur Isle is a complex of 186 units, originally built as rental apartments in the early 1970's and converted to condominiums in the early 1980's. The parties stipulated that water leakage began in 1972 and that asbestos was used in the original construction. LICOA admitted during discovery that it believed damage to asbestos-containing ceiling materials occurred "at various times between 1972 and present."

In May 1981, an attorney for the residents wrote to the developers: "As a general description of the necessary repair work you are put on notice that there is water damage throughout the apartment complex caused by leaking roofs and walls. This damage is so extensive that in certain units there is visible fungus and mushrooms growing in an obviously water-soaked environment." Lists of leaks compiled in 1982 included a unit with "totally soaked floors & walls," a leak in the "cieling [*sic*] & part way down the wall" of another unit, a third that was "totally flooded," and many leaks identified as originating in the roofs, stucco, and wood of the structures.

In May 1985, LICOA brought suit against the developers and condominium converters of the project, complaining, inter alia, of defective construction. Among the damage alleged was: "Moisture penetration and leakage through the roofs, sidewalls, windows and other exterior surface areas which has resulted in damage, including mildew, to the structural components and all other portions of the buildings, the interior surfaces of the units, and the personal property items within the individual units . . . ."

In August 1985, Truck issued LICOA the one-year policy under which LICOA later made its claim. The policy insured against all "risks of direct physical loss" subject to stated exclusions. Among these limitations was a disavowal of coverage for loss caused by rain to the "interior" of buildings.

In 1986 or 1987,[1] LICOA learned potentially hazardous asbestos-containing material was present in the condominiums' ceilings. Reports in 1987 by LICOA's asbestos consultant indicated rainwater damage to the ceilings might result in a release of asbestos; the reports recommended removal of the asbestos-containing material from damaged ceilings.

LICOA notified Truck of a possible damage claim in September 1987. The claim was denied in October 1989, and LICOA filed this action in May 1990. Although LICOA initially alleged coverage for a variety of losses, by the time of trial it sought recovery only for the cost of abating the asbestos-containing ceiling materials damaged by rainwater leakage in the second-floor units and making related repairs.

The jury awarded LICOA $497,346 on its breach of contract claim and found for the defense on a claim for breach of the covenant of good faith and fair dealing.

## DISCUSSION

In *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230] (hereafter *Prudential-LMI*), the California Supreme Court adopted the "manifestation rule" for allocating indemnity between successive first party property insurers for progressive losses spanning multiple policy periods. (*Id.* at pp. 693, 699.) Under that rule, liability for a progressive loss falls on the insurer on the risk at the time the loss manifests, i.e., at "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Id.* at p. 699.) The manifestation rule incorporates the loss-in-progress rule: the principle "that an insurer cannot insure against a loss that is known or apparent to the insured." (*Id.* at p. 695, fn. 7; see Ins. Code, § 22.) Thus, under the manifestation rule, "insurers whose policy terms commence after initial manifestation of the loss are not responsible for any potential claim relating to the previously discovered and manifested loss." (*Prudential-LMI, supra,* at p. 699.)

Both parties acknowledge the manifestation rule stated in *Prudential-LMI* governs this case, but they differ on its application. Truck argues the undisputed facts show the Larkspur Isle condominiums experienced appreciable water damage before Truck issued its policy, and LICOA's failure to immediately ascertain the full extent of the loss is immaterial.

---

[1]The exact date is disputed but is not important to our treatment of the issues.

LICOA, without disputing there had been observable water damage well before the policy period, argues damage to the asbestos-containing ceiling materials is severable, because the previously known water damage was excluded under the policy. Although damage may have been apparent earlier, LICOA argues, the claimed *loss* was not manifest until discovery of damage to the asbestos-containing material.[2] We agree with Truck the evidence is insufficient to show manifestation of the loss occurred any later than May 1985, when LICOA filed its complaint against the developers and others. The water damage was thus a loss in progress as to Truck's policy, which was issued in August 1985.

At least two cases decided before *Prudential-LMI* explain that, under the manifestation rule, the insurer on the loss at the time of appreciable damage is responsible for the entire loss, not only that portion discovered during the policy period. In *Snapp* v. *State Farm Fire & Cas. Co.* (1962) 206 Cal.App.2d 827 [24 Cal.Rptr. 44], the insurer argued its liability terminated on the expiration of its policy and did not include continuing damage after that date. The appellate court rejected that view, stating, "Once the contingent event insured against has occurred during the period covered, the liability of the carrier becomes *contractual* rather than *potential* only, and *the sole issue remaining is the extent of its obligation, and it is immaterial that this may not be fully ascertained at the end of the policy period.* [Citations.]" (*Id.* at p. 832, italics at end of sentence added.) In *Home Ins. Co.* v. *Landmark Ins. Co.* (1988) 205 Cal.App.3d 1388, 1392-1393 [253 Cal.Rptr. 277], the court quoted the above discussion from *Snapp* and held that "as between two first-party insurers, one of which is on the risk on the date of the first manifestation of property damage, and the other on the risk after the date of the first manifestation of damage, the first insurer must pay the entire claim."

The Supreme Court in *Prudential-LMI* discussed *Snapp* and *Home Ins. Co.* at length, quoted the above passages, and adopted the manifestation rule "[b]ased on the reasoning set forth in *Snapp, Sabella* [v. *Wisler* (1963) 59 Cal.2d 21 (27 Cal.Rptr. 689, 377 P.2d 889)] and *Home Ins. Co.* . . . ." (*Prudential-LMI, supra,* 51 Cal.3d at p. 699.) Thus, the Supreme Court's rule includes the principle that the insurer on the risk at the time of appreciable damage that is or should be known to the insured is liable for the entire

---

[2]LICOA made a similar argument to the jury and received a requested special instruction allowing the jury to find different manifestation dates for "[d]ifferent types of damage" even if the types were "related" and even if the earlier-discovered damage put LICOA on inquiry notice of the subsequently discovered damage. Although the propriety of this instruction is not before us, we note it incorrectly allowed the jury to separate out individual portions of the same loss, leading to the legally unsupportable verdict in this case. (See *post,* p. 111.)

progressive loss, discovered or undiscovered during the policy period. Insurers who issue policies after "initial manifestation" of a loss bear no responsibility for claims "relating to" that loss. (*Ibid.*; accord, *Hoffman* v. *State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 190-191 [19 Cal.Rptr.2d 809] [insurer not liable where loss manifested after policy period ended].)

As Truck concedes, "[b]uildings can certainly sustain different losses at different times." One might add it is theoretically possible for a building to sustain distinct losses at the same time but from different causes. Nonetheless, water damage to one particular element of a ceiling, such as the asbestos-containing material sprayed onto the drywall here, may not be separated out as a distinct loss where it proceeds from the same progressive destruction as other earlier-discovered water damage. LICOA points to no evidence the asbestos-containing material sustained damage from any other cause, or at any other time, than the other building materials damaged by the copious leaks reported before 1985 and sued upon in May of that year. Splitting the loss as LICOA proposes would result in a new loss, potentially covered by a different insurer, whenever the insured discovered a new increment of progressive damage. Such a result would defeat the purposes of certainty, reliability, and efficiency that motivate the manifestation rule. (See *Prudential-LMI*, *supra*, 51 Cal.3d at p. 699.)[3]

LICOA's claim that the loss was not manifested until coverage under Truck's policy became apparent, and the related assertion that the nonasbestos damage was excluded under the policy, are also unpersuasive, for two independent reasons. First, LICOA's theory is legally incorrect. The occurrence of "appreciable damage" (*Prudential-LMI*, *supra*, 51 Cal.3d at pp. 685,

---

[3]None of the cases LICOA cites for the proposition that different "areas of damage" can have different manifestation dates supports its position here. *Magnolia Square Homeowners Assn.* v. *Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049 [271 Cal.Rptr. 1], to the extent it is applicable, supports Truck's position rather than LICOA's. The court held that while separate areas of damage may exist in some cases, a complaint against a developer and others for structural defects established the untimeliness of a later suit against the insurance company, filed beyond the 12-month limit and seeking indemnity for such defects, even though the plaintiff "may not have known the full extent of the structural problem" at the time it filed the initial complaint. (*Id.* at pp. 1059-1060.) In addition, the cases make clear distinctions between first party and third party claims. *Chu* v. *Canadian Indemnity Co.* (1990) 224 Cal.App.3d 86, 99 [274 Cal.Rptr. 20], a third party liability insurance case, applied a different standard for that reason and for the same reason declined to follow *Home Ins. Co.* v. *Landmark Ins. Co.*, *supra*, 205 Cal.App.3d 1388. *Winston Square Homeowner's Assn.* v. *Centex West, Inc.* (1989) 213 Cal.App.3d 282 [261 Cal.Rptr. 605] did not involve an insurance claim at all; the cited portion holds only that the statute of limitations was tolled as to structural defects causing leakage of water into units while the defendant developer attempted to remedy them, but not as to defective land drainage for which no repairs had been attempted. (*Id.* at pp. 287-289.)

687, 699) does not depend upon discovery that the damage constitutes a covered loss under a particular policy. (See *Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565, 571-573 [251 Cal.Rptr. 319] [inception of loss not delayed to date insured learned from his attorney damage might be covered under policy; cited with approval in *Prudential-LMI, supra*, 51 Cal.3d at pp. 685-686].) Nor is it even logical to compare the known damage before August 1985 to the coverage limits of Truck's policy, which had not yet been issued. As Truck notes, LICOA's argument that damage does not manifest as a "loss" until it is found to be covered under a policy would allow a property owner to obtain coverage for existing uninsured damage simply by purchasing a new, broader policy. This, of course, is exactly what the loss-in-progress rule forbids.[4]

Second, even if LICOA's legal premise were correct, the facts here would offer it no support. LICOA's primary factual theory is apparently that the water damage discovered before August 1985 was excluded as a loss caused by rain to the "interior" of the units, but damage to the asbestos-containing material *was* covered because the material, some of which had been painted over, was not a "finish" and was thus also not an "interior" portion of the buildings. For the purposes of this discussion, we accept LICOA's definition of "interior." The pre-1985 damage reports and the May 1985 complaint, however, amply demonstrate water damage was not limited to the interior finishes. Notably, there were reports of floors and walls that were "totally soaked," and the complaint refers to water-damaged "structural components" of buildings. Thus, under LICOA's own legal theory and definitions, the evidence still shows appreciable damage was apparent before Truck's policy issued.[5]

We conclude the evidence was insufficient to support the verdict, because the loss manifested prior to Truck's policy period and was thus, as a matter of law, an uninsurable loss in progress as to Truck. This conclusion requires

[4]*Central Nat. Ins. Co.* v. *Superior Court* (1992) 2 Cal.App.4th 926 [3 Cal.Rptr.2d 622], upon which LICOA relies, considered whether inception of a loss may be delayed, for purposes of the 12-month limitations period, under a "special purpose, specified peril policy" (*id.* at p. 932) until the insured has reason to believe the loss was caused by one of the specified perils. The court held "the type of policy" may be considered along with other circumstances in determining the date of inception, distinguishing *Prudential-LMI* as involving an all-risk policy. (*Id.* at pp. 932-933.) *Central National* thus has no application to the case at bar, which, like *Prudential-LMI*, involves a broad peril policy.

[5]LICOA asserts more generally that the evidence shows "that all of the damage discovered by LICOA prior to August 1987 was excluded" under the policy. This statement is neither explained nor supported with citations to the record. Our review of the briefing and record fails to reveal in what respect the asbestos-containing ceiling material was unique, such that only damage to that particular material would be covered under the policy.

the judgment be reversed without the possibility of retrial. Given this resolution, we do not reach the questions of timeliness and policy coverage that the parties have also briefed.

### DISPOSITION

The judgment of the superior court is reversed. Costs to appellants.

White, P. J., and Chin, J., concurred.

A petition for a rehearing was denied December 28, 1994, and respondent's petition for review by the Supreme Court was denied March 15, 1995. Mosk, J., was of the opinion that the petition should be granted.