Gary **SULLIVAN** and Donna Robey–Sullivan, Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY, a corporation, and Does 1 through 100, inclusive, Defendants.**

No. **CV–96–5085 KMW CTx.**

United States District Court, C.D. California.

April 18, 1997.

Joseph Malham, John R. Yates, Jr., Pasadena, CA, for plaintiffs.

Ronald D. Kent, Charles W. Hokanson, Sonnenschein Nath & Rosenthal, Los Angeles, CA, for defendants.

WARDLAW, District Judge.

The Court has considered the motion of Defendant Allstate Insurance Company ("Allstate") for Summary Judgment or, Alternatively, for Partial Summary Judgment on the Issue of Punitive Damages. The Matter came on for hearing before the Honorable Kim McLane Wardlaw on March 31, 1997. Plaintiffs were represented at the hearing by John P. Yates, Esq. Defendant was represented by Ronald D. Kent, Esq. Based upon all briefs, exhibits, declarations, and other evidence submitted by the parties, the oral argument of counsel, as well as all files and records in this case, the Court is prepared to rule on this Motion and hereby Grants Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiffs, Gary Sullivan and Donna Robey–Sullivan filed this action on March 25, 1996 in California state court. Plaintiffs alleged that Allstate failed to pay them benefits owed to them for earthquake damages under the insurance policy issued to them by Allstate. They alleged claims for breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress. They also sought a declaration that they were owed policy benefits by Allstate. Allstate properly removed the action to this Court on July 22, 1996.

This action concerns liability under a contract of insurance for earthquake related damages. In the early morning of January 17, 1994, a severe (magnitude 6.7) earthquake hit the Southern California area which had its epicenter a short distance from Plaintiffs' home. Plaintiffs were home during the Earthquake and experienced the effects of the shaking. *Declaration of Mary DiNapoli,* ex. 1, p. 20, II. 6–10. Immediately thereafter, they recognized that their home and their personal property had suffered significant damage. Among other things, they saw chipping and cracking of the plaster and separation of their hardwood floors in their dining/living room (*id.,* p. 13, I. 13–p. 14, I. 10); fallen tiles in their bathroom (*id.,* p. 16, I. 16—p.17, I. 25); cracks in the kitchen plaster and cuts in the kitchen linoleum (*id.,* p. 18); broken glass "slats" in their bedroom (*id.,* p. 19, II. 2–9); cracks in their stairway (*id.,* p. 21); major cracks in their children's bedroom (*id.,* p. 21, I. 9–21); and large and pervasive cracks in their retaining wall, exterior stucco, and pool patio (*id.,* pp. 23–24). Plaintiffs were aware that each room in their house, as well as the exterior of the structure suffered earthquake damage immediately after the Earthquake on January 17, 1994. Plaintiffs also noticed immediately that the Earthquake destroyed some of their personal

property, including crystal, dishes, bottles of liquor and a television set. *Id.,* p. 9, I. 19—p. 10, I. 15.

At the time of the Earthquake, Allstate insured Plaintiffs' home under an homeowners policy which bore policy number 099 164 043 and was written on policy form AU 1774 (the "Policy"). *Compl.* ¶ 6; *DiNapoli Decl.,* exs. 2, 3. The Policy provided earthquake coverage. *Compl.,* ¶ 5. The Policy also included a one-year limitations provisions limiting the insured's time to seek policy benefits. Under the heading "Section I, Conditions," the Policy states:

> No suit or action may be brought against us unless there has been full compliance with all the policy terms. *Any suit or action must be brought within one year after the date of loss.*
>
> [*DiNapoli Decl.,* ex. 3, p. 62 (emphasis added).]

Even though Plaintiffs recognized that they had earthquake insurance[1] and that they sustained earthquake damage immediately after the Earthquake, they did not promptly submit a claim to Allstate. Rather, Plaintiffs waited until February 21, 1995 before they submitted their claim. *DiNapoli Decl.,* ex. 1, pp. 27–28. Prior to that time, Plaintiffs apparently believed that the cost to repair their damages did not exceed their deductible. *Compl.* ¶ 6; *DiNapoli Decl.,* ex. 1, p. 10, I. 20—p. 11, I. 25; p. 29,I. 19—p. 30, I. 15. They took no action to determine the full extent of the damage or the cost of repairs. *DiNapoli Decl.,* ex. 1, p. 30, I. 24—p. 31, I. 5; p. 26, I. 23—p. 28, I. 22. Instead, they decided to wait for Mrs. Sullivan to receive an inheritance, so they would have the money to undertake the earthquake repairs. *Id.,* p. 10, I. 20—p. 11, I. 1.; p. 26, I. 23—p. 27, I. 3; p. 29, I. 19–25.

Over a year after the Earthquake, in February 1995, Plaintiffs' home began to leak.[2] *Compl.* ¶ 7; *DiNapoli Decl.,* p. 11, I. 19–21; p. 20,. 15—p. 22, I. 1. Although their earthquake damage had not worsened over the

year, when water began leaking into the structure in 1995 it caused the existing cracks to enlarge and the existing plaster damage to be exacerbated. *See, e.q., DiNapoli Decl.,* ex. 1, p. 25,. I. 24'p. 26, I. 6; p. 20, I. 15—p. 22, I. 1. Plaintiffs called out a contractor to fix the leaks. *Id.,* p. 26, II. 7–15. In addition to telling Plaintiffs they needed a new roof, the contractor estimated that Plaintiffs had approximately $50,000 in earthquake damage to their home. *Id.,* p. 26, II. 7–15, p. 29, I. 19, to p. 30, I. 15. As a result, on February 21, 1995, Plaintiffs for the first time submitted a claim for earthquake benefits to Allstate. *Id.,* p. 27, I. 18—p. 28, I. 19.

After receiving the claim, Allstate inspected the property and took a recorded statement from Mr. Sullivan Based upon its investigation, Allstate concluded that Plaintiffs' claim for earthquake benefits was barred by the one-year suit limitations provision set forth in the Policy. On March 27, 1995, Allstate sent Plaintiffs a letter denying coverage for their earthquake loss. *DiNapoli Decl.,* ex 4. Plaintiffs then waited almost another full year after receipt of that letter before filing suit on March 25, 1996 (and failed to serve the complaint for another three months after that). *Notice of Removal,* Ex. A. Thus, Plaintiffs waited more than two years after the date of their earthquake loss before filing this suit.

## ANALYSIS

### A. *This Case Is Appropriate For Summary Judgment*

Under Federal Rule of Civil Procedure 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *State Farm Fire & Cas. Co. v. Byrd,* 729 F.Supp. 1265, 1266 (N.D.Cal.1990). *See also Anderson v. Liberty Lobby, Inc.,* 477

---

1. *See DiNapoli Decl.,* ex. 1, p. 6, II. 15–20.

2. While Plaintiffs' home leaked shortly after the Earthquake as well, apparently the leaking was less substantial and Plaintiffs did not take any

action in response to the initial leaking. *DiNapoli Decl.,* ex. 1, p. 19, II. 9–16; p. 20, I. 21–p. 22, I. 1.

U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact* ").

This case is appropriate for disposition by summary judgment. There is no triable issue of material fact. The one-year limitations provision in the Policy bars each count in Plaintiffs' complaint.

## B. *The One–Year Limitations Period Bars This Lawsuit*

■ The material facts here are undisputed. Plaintiffs' home was damaged by the January 17, 1994 Earthquake and Plaintiffs were aware that they had suffered some damage on the day of the Earthquake. Notwithstanding that knowledge, Plaintiffs failed to submit a claim to Allstate or institute suit for policy benefits within one year after thereafter. Under these circumstances, Plaintiffs' lawsuit and each cause of action contained therein is barred by the one-year contractual limitations period contained in the Policy: "[a]ny suit or action [against Allstate] must be brought within one year after the date of loss."

The one-year limitations provision at issue here paraphrases, and is specifically endorsed by, California Insurance Code Section 2071. That statute sets forth the permissible terms of first party fire insurance policies issued in California. See Cal. Ins.Code § 102 (defining earthquake insurance as fire insurance). Section 2071 provides that all such policies shall contain a provision substantially similar to the following:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.

One-year limitations provisions in insurance policies pursuant to Section 2071 have been uniformly enforced by California courts. *E.g., State Farm Fire & Cas. Co. v. Superior Court,* 210 Cal.App.3d 604, 611, 258 Cal.Rptr.

413 (1989). As Supreme Court of California recently emphasized, "[a] covenant shortening the period of limitations is a valid provision in an insurance contract and cannot be ignored with impunity." *Prudential–LMI Com. Ins. v. Superior Ct.,* 51 Cal.3d 674, 683, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990); *see also San Jose Crane & Rigging, Inc. v. Lexington Ins. Co.,* 227 Cal.App.3d 1314, 278 Cal.Rptr. 301 (1991). Indeed, the very provision at issue here has been judicially enforced. *Lally v. Allstate Ins. Co.,* 724 F.Supp. 760, 762 (S.D.Cal.1989), *aff'd,* 930 F.2d 28 (9th Cir.1991).

■ Because suit limitations provisions are statutorily endorsed, they are not construed against the insurer. *Prudential–LMI,* 51 Cal.3d at 684, 274 Cal.Rptr. 387, 798 P.2d 1230. Rather, the provisions are to be applied fairly to effectuate the intent of the Legislature embodied in Section 2071 to preclude the assertion of stale claims, require insureds to be diligent and prevent fraud. *Id. See also Magnolia Square Homeowners Assn. v. Safeco Ins. Co.,* 221 Cal.App.3d 1049, 1060, 271 Cal.Rptr. 1 (1990). Thus, all that needs to be shown to establish the defense is the passage of time from the date of loss. *State Farm,* 210 Cal.App.3d at 612, 258 Cal. Rptr. 413.

■ The one-year limitations period begins to run when the insured is aware of appreciable damage to his or her property. As the California Supreme Court stated in *Prudential–LMI:*

> The insured's suit on the policy will be deemed timely if it is filed within one year after "inception of loss," defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered. [51 Cal.3d at 686–87, 274 Cal.Rptr. 387, 798 P.2d 1230.]

■ The standard for determining the date of loss is objective—when a reasonable person would be aware of damage which "deviat[es] from what a reasonable person would consider normal 'wear and tear.'" *Id.,*

at 687, 274 Cal.Rptr. 387, 798 P.2d 1230. In the context of a loss caused by a single catastrophic event such as an earthquake, the date of loss can only be the date of that event. At that time, a reasonable person would be aware of the facts which might give rise to a claim where any noticeable damage exists as the cause would be known not to be "wear and tear". *Prieto v. State Farm Fire & Cas. Co.*, 225 Cal.App.3d 1188, 1196, 275 Cal.Rptr. 362 (1990) (limitations period began to run on date of fire because it was "a sufficiently disastrous loss, at which Plaintiffs were personally present, [so as] to alert them immediately [of the loss]"); *Abari v. State Farm Fire & Cas. Co.*, 205 Cal.App.3d 530, 535, 252 Cal.Rptr. 565 (1988) ("it is the occurrence of some cognizable event rather than knowledge of its legal significance that starts the running of the statue of limitations").

Here, we need not even reach the objective standard. Plaintiffs subjectively were aware they had suffered appreciable damage the morning of January 17, 1994 which they believed resulted from the Earthquake. Plaintiffs were home and felt the quake. Immediately after the shaking subsided, they saw damage to their property. They knew that nearly every room in their house was damaged, that the exterior of the house was damaged, and that some of their personal property had been destroyed. As such, the limitations period began running on the date of the Earthquake, January 17, 1994—the date Plaintiffs suffered, and knew they suffered, losses resulting from the Earthquake.

Plaintiffs, however, did not submit a claim within one year after January 17, 1994. They waited until February 21, 1995 to file their claim. Thus, their claim already was time-barred when it was submitted. Nevertheless, Plaintiffs waited another year after being advised that Allstate was denying their claim as untimely before filing this lawsuit. This lawsuit is barred by the contractual limitations period set forth in Plaintiffs' Allstate Policy.

### C. *Plaintiffs Arguments In Opposition To Allstate's Motion Fail To Raise A Genuine Issue Of Fact.*

Plaintiffs construct three arguments to avoid the running of the limitations period.

They first contend that they complied with the notice condition of their policy by reporting their loss as soon as they realized it exceeded their deductible. They next assert that theirs was a "progressive loss" such that they were entitled to an extra year to submit their claims pursuant to a "discovery rule." Finally, Plaintiffs argue that Allstate must demonstrate that it would have paid for their loss had they complied with the one year limitations provision. None of these arguments presents a triable issue of fact.

### 1. *The Policy's Notice Clause Is Irrelevant To Allstate's Motion.*

Plaintiffs claim that Allstate should not be granted summary judgment because they "complied with the standard of reasonable and timely loss reporting under the standard one year reporting clause" and Allstate has produced no proof that Plaintiffs' "actions in reporting this loss were not reasonable under all the circumstances." *Opp Brf.*, p. 2, II. 22–24. In so doing, Plaintiffs appear to misconstrue the basis of Allstate's motion. Allstate's motion was not based on the notice clause quoted in Plaintiffs' opposition brief. Rather, Allstate relied on the one year suit limitations provision contained in the Policy to support this motion.

The notice clause and the one year limitations clause are distinct policy conditions. *State Farm*, 210 Cal.App.3d at 612, 258 Cal. Rptr. 413; *Lawrence v. Western Mut. Ins. Co.*, 204 Cal.App.3d 565, 574, 251 Cal.Rptr. 319 (1988). "[F]ailure to abide by the limitation of action condition in a policy stands on a much difference footing than a non-compliance with the notice provisions." *State Farm*, 210 Cal.App.3d at 612, 258 Cal.Rptr. 413. Accordingly, summary judgment may be based upon the suit limitations clause without regard to the notice clause—"[n]othing more than the mere passage of time is required ... to bar an action" under the one year suit limitations provision. *Id.* Thus, Allstate has no duty to show that Plaintiffs' actions were unreasonable and compliance or non-compliance with the notice condition is irrelevant. It is undisputed that the one

year suit condition was not met here and Plaintiffs' action is therefore time barred.

Additionally, Plaintiffs' implication here that the limitations period did not begin to run until they realized they might have a covered loss (which they define as a loss which exceeds the Policy's deductible) is untenable. Plaintiffs appear to contend that because they only had to report a "covered loss," they could not have suffered "appreciable damage" within the meaning of *Prudential–LMI* to start the running of the limitations period until they knew their losses were "covered," *i.e.*, that they had suffered a loss which exceeded their deductible. There is no support for such a position. Indeed, all authority is to the contrary.

■ California law is clear that contractual suit limitations periods begin to run on the date of cognizable damage even if the insured subjectively believes that its policy provides no coverage for the damage. *Lawrence*, 204 Cal.App.3d at 573, 251 Cal.Rptr. 319. In fact, one court has directly stated that the "occurrence of 'appreciable damage' [under the *Prudential–LMI* rule] does not depend upon discovery that the damage constitutes a covered loss under a particular policy." *Larkspur Isle Condominium Owners' Assn. v. Farmers Ins. Group*, 31 Cal.App.4th 106, 111–12, 37 Cal.Rptr.2d 3 (1994). Thus, Plaintiffs' implicit argument is legally incorrect. Their action is clearly time barred under applicable law.

Moreover, Plaintiffs' argument in this regard is based upon a misreading of their Policy. Plaintiffs were required under the clear terms of their policy's notice clause to promptly report any loss for which they might seek coverage. The notice clause in Plaintiffs' policy states:

"In the event of a loss to any property that *may be covered* by this policy, you must ... promptly give us or our agent written notice." [DiNapoli Dec., ex. 3, page 17 (emphasis added).]

■ The plain language of this clause requires the reporting of any loss "that *may* be covered" and not simply losses that actually are covered.[3] The clear import is to require prompt reporting of all losses for which the insured might seek coverage so that the insurer may investigate the loss in a timely manner and avoid any prejudice caused by a lapse of time. *State Farm*, 210 Cal.App.3d at 612, 258 Cal.Rptr. 413. Thus, Plaintiffs' argument is not only legally erroneous, it is factually unsupported.

### 2. Plaintiffs' Suit Is Barred Even If A Delayed Discovery Rule Applies

■ Plaintiffs next contend that their earthquake damages should be considered a "progressive loss" such that a "delayed discovery rule" should apply to their loss. However, Plaintiffs' loss cannot be characterized as a progressive loss merely because they allowed their property to deteriorate rather than repair their damage. And, in any event, even under the proposed "delayed discovery rule," Plaintiffs' action is time barred.

Plaintiffs contend that because Mr. Sullivan "saw slight damage to his home become progressively worse," the Court should conclude this was a progressive loss. They equate their loss with the expansive soils loss discussed in *Prudential–LMI*. That comparison is not warranted. The plaintiff in *Prudential–LMI* was unaware that he had suffered any damage for some time, but submitted a claim to its insurer one month after first discovering appreciable damage. 51 Cal.3d at 680, 274 Cal.Rptr. 387, 798 P.2d 1230. Plaintiffs in contrast knew they had earthquake damage on January 17, 1994, but waited for over a year to submit their claim during which time Plaintiffs allowed the condition of their home to worsen. The two situations are in no sense comparable. *See Prudential–LMI*, 51 Cal.3d at 687, 274 Cal.

---

**3.** Additionally, Plaintiffs' equation of "covered loss" with "a loss that exceeds the deductible" is insupportable. Whether a loss is a "covered loss" is determined by application of the coverage clause and exclusions not whether the claim will result in payment of benefits. *Wells Fargo Bank v. California Guarantee Assn.*, 38 Cal.

App.4th 936, 948–49, 45 Cal.Rptr.2d 537 (1995). Even the "payment" clause to which Plaintiffs cite refutes their argument. That clause states Allstate "will pay [policy benefits] only when a covered loss exceeds the deductible." This clear language shows that a "covered loss" may exist which does not exceed the policy's deductible.

Rptr. 387, 798 P.2d 1230 ("[t]o take advantage of the benefits of a delayed discovery rule, . . . the insured is required to be diligent in the face of discovered facts").

In fact, Plaintiffs' claim is much more like the one presented in Prieto, 225 Cal.App.3d at 1196, 275 Cal.Rptr. 362, where the court ruled that the limitations period began running on the date of a fire because "it was a sufficiently disastrous loss, at which Plaintiffs were personally present [so as] to alert them immediately [of their damage]." Here, Plaintiffs seek policy benefits for damage caused by the January 17, 1994 Northridge earthquake. They were present in their home the morning of the earthquake and recognized immediately that it had caused damage to their home. Thus, this is not a progressive loss, but is a single catastrophic loss. Plaintiffs cannot transform the "sufficiently disastrous loss, at which [they] were personally present" into a progressive loss by failing to repair the damage they knew about.

▮ In any event, and whether or not Plaintiffs' loss is a "progressive loss," this action is time-barred. Even if this were a progressive loss case, the limitations period would have run on January 17, 1995—one year from the date of the earthquake. It is undisputed that Plaintiffs were aware of "appreciable damage" to their property on the day of the earthquake and the limitations period began to run on that date. As noted above, appreciable damage exists when an insured first discovers damage which "deviat[es] from what a reasonable person would consider normal 'wear and tear'." *Prudential–LMI,* 51 Cal.3d at 687, 274 Cal.Rptr. 387, 798 P.2d 1230; *see also Larkspur,* 31 Cal.App.4th at 111, 37 Cal.Rptr.2d 3 (where successive items of damage occur from same cause of loss, manifestation date is the date of discovery of the first damage). And, as noted above, "[t]he occurrence of 'appreciable damage' . . . does not depend upon discovery that the damage constitutes a covered loss under a particular policy." *Larkspur,* 31 Cal.App.4th at 111–12, 37 Cal.Rptr.2d 3.

Here, Plaintiffs recognized immediately after the earthquake that it had caused damage to their home. They knew the cause of their damage and knew it was not normal "wear and tear." Thus, Plaintiffs indisputably were aware of "appreciable damage" on January 17, 1994 and their limitations period began to run on that date. Whether they believed that damage was covered or not makes no difference and they cannot rely on later discovered damage arising from the same cause of loss to save their claims. A single limitations period applies to all damages caused by the earthquake. That limitations period here expired January 17, 1995 and Plaintiffs' suit is time barred.

### 3. Allstate Has No Duty To Show It Would Have Paid Plaintiffs' Loss If They Had Complied With The Policy Terms

▮ Plaintiffs' finally argue that Allstate must show it would have paid Plaintiffs' loss if they had submitted a timely claim before it may enforce the one-year limitations provision. Plaintiffs cite no authority for this assertion because there is none. In fact, as noted above, "[n]othing more than the mere passage of time is required" to bar an action based on the limitations provision "regardless of hardship or the underlying merits of the claim." *State Farm,* 210 Cal.App.3d at 612, 258 Cal.Rptr. 413. Plaintiffs' speculation about what might have happened had they complied with their policy's conditions fails to raise a triable issue of fact.

### D. The One–Year Limitations Provision Applies to Plaintiffs' Contract and Tort Claims

▮ Although Plaintiffs plead claims sounding in both contract and tort, all such counts are "on the policy" and therefore subject to the one-year contractual limitations period. California cases interpreting one-year limitations provisions have made clear that the issue is not whether the action sounds in tort or contract, but whether it is "on the policy," *i.e.,* whether the claims seek to recover policy benefits or are grounded upon a failure to pay policy benefits. *Velasquez v. Truck Ins. Exch.,* 1 Cal.App.4th 712, 721, 5 Cal.Rptr.2d 1 (1991) (affirming summary judgment on grounds that one-year limitations period barred plaintiffs tort

claims for "bad faith" and intentional infliction of emotional distress); *Prieto,* 225 Cal. App.3d at 1195, 275 Cal.Rptr. 362 (actions "are 'on the policy' [if] grounded in a failure to pay benefits that are due under the policy."); *Abari,* 205 Cal.App.3d at 536, 252 Cal. Rptr. 565.

One-year limitations provisions have been broadly applied to both contract and tort actions, including claims based on allegations relating to the handling of a claim or the manner in which it was investigated, adjusted or processed. The *Velasquez* court wrote:

> Where denial of the claim in the first instance is the alleged bad faith and the insured seeks policy benefits, the bad faith action is on the policy and the limitations provision applies. [1 Cal.App.4th at 721, 5 Cal.Rptr.2d 1.]

Similarly, in *Magnolia Square,* the court held that the one-year limitations period applied to a "bad faith" breach of fiduciary duty and breach of statutory duty claims:

> [T]he essence of [the insured's claims for bad faith and breach of fiduciary and statutory duties] is an attempt to recover '[d]amages for failure to provide benefits under subject contract of insurance.' As such, [the insured's] claim is 'fundamentally a claim on the policy and is thus time barred.' (Citations omitted.) 221 Cal. App.3d at 1063, 271 Cal.Rptr. 1.

*See also Abari,* 205 Cal.App.3d at 536, 252 Cal.Rptr. 565 (characterizing the plaintiff's claims for bad faith and unfair practices as a "transparent attempt to recover *on the policy,* notwithstanding [plaintiffs] failure to commence suit within one year of accrual.") (emphasis in original); *Prieto,* 225 Cal. App.3d at 1195, 275 Cal.Rptr. 362 ("[b]ut we find neither reason nor authority to signify that a plaintiffs election to seek redress under the implied covenant rather than the express contract should nullify the legislatively prescribed limitation for actions that are 'on the policy' because grounded in a failure to pay benefits that are due under the policy and indeed constitute its very reason for being"); *see also Prudential–LMI,* 51 Cal.3d at 683–87, 274 Cal.Rptr. 387, 798 P.2d 1230.

Plaintiffs' tort claims are clearly "on the policy." All of the alleged acts which form the basis of these purported claims occurred during the claim handling process and resulted in Plaintiffs' alleged failure to receive proper policy benefits. *See Compl.* ¶¶ 9, 10, 12, 13, 15, 17, 19, 20, 22, 23, 25. For example, Plaintiffs repeatedly allege that their damages were caused by Allstate's "conduct in denying Plaintiffs benefits under the policy" and "Allstate's denial of Plaintiffs' claim." *Compl.* ¶¶ 15, 20, 23. Each of Plaintiffs' five purported counts is "on the policy." Each is subject to the one year limitations period and is time-barred.

### E. Plaintiffs Have Failed to Raise a Genuine Issue of Material Fact With Respect to Their Tort Claims

Whether or not such claims are "on the policy" as defined in *Prieto,* it is clear that plaintiffs have no claim for a breach of the covenant of good faith and fair dealing in this case. An insurer is liable for breach of the implied covenant of good faith and fair dealing if it acted unreasonably in denying coverage. *Lunsford v. American Guarantee & Liability Insurance,* 18 F.3d 653, 656 (9th Cir.1994). The insurer is obligated to give the interests of the insured at least as much consideration as it gives its own interests. *Othman v. Globe Indemnity Co.,* 759 F.2d 1458, 1464 (9th Cir.1985), *overruled on other grounds,* 844 F.2d 602, 605 (1988). To prevail on a claim that the insurer has breached the implied covenant of good faith and fair dealing, the insured must show that (1) the insurer withheld benefits due under the policy and (2) the reason for withholding the benefits was unreasonable or without proper cause. *Love v. Fire Ins. Exchange,* 221 Cal. App.3d 1136, 1151, 271 Cal.Rptr. 246, 255 (1990). The covenant of good faith and fair dealing works to protect the express terms of the contract, not to replace them. *Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1766, 1771–72, 31 Cal.Rptr.2d 224 (1994) ("the obligation of 'good faith' conduct does not exist independent of an express contractual obligation, but must be appurtenant to express contractual duties"); *Racine & Laramie, Ltd. v. Department of Parks & Recreation,* 11 Cal.App.4th 1026, 1031–1032, 14

**1416**

Cal.Rptr.2d 335 (1992)("the covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy"). Similarly, plaintiffs have presented no facts that would support a claim for intentional or negligent infliction of emotional distress. Within a week after plaintiffs' report of the claim, Allstate sent a claims representative to examine the property. Within several weeks after that, Allstate denied the claim based on the limitations period. Furthermore, there exists no issue of material fact that would justify an award of punitive damages. In order to prevail on a claim for punitive damages in an insurance case, the plaintiffs must come forward with "clear and convincing evidence" of fraud, oppression or malice. *Stewart v. Truck Ins. Exch.*, 17 Cal. App.4th 468, 481–82, 21 Cal.Rptr.2d 338. Plaintiffs have presented no such evidence in the instant case.

### F. *Allstate's Alternative Motion Is Moot.*

Given the Court's ruling on Allstate's motion for summary judgment, the Court finds it unnecessary to rule on its alternative motion for partial summary judgment on the issue of punitive damages.

### *CONCLUSION*

In sum, the Court holds that this action, and each individual count contained therein, is barred by the one-year limitations provision contained in the Policy. The limitations period began to run on January 17, 1994 when Plaintiffs recognized they had suffered appreciable damage attributable to the Northridge earthquake. It expired one year later on January 17, 1995. As this lawsuit was not filed until March 25, 1996, it is barred. Therefore, Allstate's motion for summary judgment is granted.

**IT IS SO ORDERED.**