[No. 64669-4. En Banc.]
Argued June 17, 1997.    Decided November 26, 1997.

Hillhaven Properties Ltd., *Respondent*, v. Sellen
Construction Company Inc., *Defendant*, Aetna
Insurance Company, *Petitioner*.

*Bullivant, Houser, Bailey, Pendergrass & Hoffman*, by *R. Daniel Lindahl*, for petitioner.

*Oles, Morrison & Rinker*, by *Seth W. Morrison*, for respondent.

*Michael E. Ricketts* and *William E. Fitzharris, Jr.*, and *Mark J. Seplak* of *Clausen Miller*, on behalf of Insurance Environmental Litigation, amicus curiae.

SMITH, J. — Petitioner Aetna Insurance Company seeks review of a Court of Appeals decision which reversed summary judgment granted by the Pierce County Superior Court in Aetna's favor in an action by Hillhaven Properties, Limited for insurance coverage for water seepage and leakage damage around windows in the Narrows Glen retirement facility. We granted review. We affirm.

## QUESTION PRESENTED

The question presented in this case is whether coverage is provided under an insurance policy acquired from a replacement insurer under a master policy after damage to a structure from known water seepage and leakage or whether policy coverage is precluded under the "known loss doctrine."

## STATEMENT OF FACTS

The Narrows Glen retirement community, located at

8201 Sixth Avenue, Tacoma, Washington,[1] was built for Hillhaven Properties Limited (Hillhaven) by Sellen Construction Company, Incorporated (Sellen). Narrows Glen is a three-story, wood frame structure. It consists of 130 apartments, 10 assisted living units and ancillary facilities.[2] The administrative and common area is located in the center of the facility with residential wings radiating from it.[3] Narrows Glen was insured by Hartford Fire Insurance Company under a master policy for Hillhaven Properties from November 2, 1987 until June 1, 1989.[4] Aetna Insurance Company (Aetna) replaced Hartford as insurer on June 1, 1989.[5]

Narrows Glen started renting its units in November 1987.[6] During the winter of 1987-88, water seepage and stains developed around some of the windows. This was attended to by in-house maintenance staff and Sellen staff. The Sellen staff caulked the outside of the windows.[7] Hillhaven was not particularly concerned about the water seepage because the staff reasoned that problems such as these are not unexpected in a new building.[8]

The water seepage and window damage problem reoccurred in the winter of 1988-89 in five or six apartments

[1]See Letter to Darren Steel at Schemmer and Associates from Marlea A. Haugen of Wedge Engineering Corporation, dated Feb. 18, 1991, Clerk's Papers at 188.

[2]See Clerk's Papers at 261.

[3]See id.

[4]See Statement of Premium Adjustment, Clerk's Papers at 70. Hartford Fire Insurance Company was not named in the lawsuit.

[5]See Br. of Resp't. Aetna at 3; Reply Br. of Hillhaven Properties, Ltd., at 4. The policy covered Hillhaven properties throughout the United States. Narrows Glens is included among the properties listed. See Aetna Casualty and Surety Company policy, Clerk's Papers 16-68.

[6]See Aff. of Holly Peterson, Pierce County Superior Court, Cause No. 91-2-11357-8, Clerk's Papers at 272. Ms. Peterson was the first executive director of the Narrows Glen retirement community facility from November 1, 1987 until May 8, 1989.

[7]See id.

[8]See id. at 272-73.

along one wing of the facility.[9] The maintenance supervisor, Chris Higgins, at the request of the facility's executive director, wrote a letter to Sellen identifying the problem and requesting that it be corrected.[10] The letter stated in part:

> This letter is to inform you of the present situation here at the Narrows Glen Retirement Community regarding the critical subject and immediate problem of interior water damage at many of the apartment windows here at the facility. Numerous resident complaints of water seepage and drippage accompanied by obvious related physical damage to window interior perimeters and ledges have presented a significant problem, one that requires an immediate thorough review resulting in a definitive course of corrective action.

After receipt of the letter, Sellen made additional repairs and the problem seemed to have been resolved. The Aetna policy went into effect on June 1, 1989, after those repairs had been completed.

There was more water seepage around the windows during the winter of 1989-90. Hillhaven then hired an independent contractor, W. G. Clark Construction, to investigate the problem.[11] Clark Construction submitted its report to Hillhaven on November 30, 1989, in which it stated the vapor barrier had been improperly installed with the result that water was allowed to seep into the walls between the window frames and casements. This resulted in water saturation of the siding, wood framing and gypsum sheathing. Hillhaven notified Aetna Insurance Company and its predecessor, Hartford Fire Insurance Company, of this by letter dated December 15, 1989.[12]

---

[9]See id. at 272.

[10]See Letter to Bill Boysen at Sellen Construction Company from Chris Higgins, Maintenance Supervisor at Narrows Glen, dated Jan. 16, 1989, Clerk's Papers at 176.

[11]See Letter to George Lenes of Narrows Glen from Jeff Williams, Project Manager, W. G. Clark Construction Company, Clerk's Papers at 250-52.

[12]See Letter to Pat Goodson of Alexander and Alexander from Jan Dorweiler, Risk Management Supervisor, Hillhaven Corporation, dated Dec. 15, 1989, Clerk's Papers at 178-79.

In the spring of 1990 Hillhaven implemented design corrections recommended by W. G. Clark for Narrows Glen. However, it was not successful in preventing additional water problems during the fall of 1990. A design company, Schemmer Associates, Inc., was then hired to perform additional tests. It concluded that the vapor barriers had become porous on installation and caused the leakage around the windows.[13] It became necessary the following summer of 1991 to rebuild a portion of Narrows Glen at a cost of over $1,000,000.00.[14]

The sequence of developments in this matter is summarized as follows:

| | |
|---|---|
| November 2, 1987 | Hartford Fire Insurance Company became insurer for Hillhaven Properties. |
| November/ December 1987 | Hillhaven Properties substantially completed construction for Narrows Glen. |
| Winter 1987-88 | Water stains noticed at Nar rows Glen, but considered only for "punch list" repair. |
| Winter 1988-89 | Water stains reported in 5 or 6 apartments at Narrows Glen. |
| January 16, 1989 | Letter from Narrows Glen to Sellen Construction regarding problem. |

---

[13]See " 'Building Leakage' Investigation, Testing, Discovery and Conclusion" dated May 9, 1991 by Schemmer Associates, Inc., Clerk's Papers at 222-31.

[14]See Defendant Hoffman Partnership, Inc.'s [sic] First Interrogs. and Reqs. for Produc. of Docs. to Pls. and Answers, Clerk's Papers at 174; Decl. of George Lenes [Development Manager for Hillhaven] for Hillhaven re Aetna Summ. J. Mot., Clerk's Papers at 248.

| | |
|---|---|
| June 1, 1989 | *Aetna Insurance Company became insurer for Hillhaven Properties, replacing Hartford Fire Insurance Company.* |
| November 30, 1989 | W. G. Clark Construction Company reported result of its investigation. |
| December 15, 1989 | Notification letter from Hillhaven to Hartford Insurance Company and Aetna Insurance Company. |
| Spring 1990 | Narrows Glen repaired window damage and implemented design correction. |
| Fall 1990 | Water seepage and window leakage problem became worse. |
| May 9, 1991 | Schemmer Associates, Inc. reported result of tests concerning problem and recommended solution. |
| Summer 1991 | Major repairs and rebuilding completed at Narrows Glen. |

On October 31, 1991, Hillhaven brought action for damages in the Pierce County Superior Court against Sellen, E. I. DuPont de Nemours & Company, Incorporated, Acorn Building Components/West, Incorporated, Hoffman Partnership, Incorporated, Safeco Insurance Company of America as performance bond surety for Sellen, and Aetna.[15] Aetna denied coverage and moved for summary judgment which was granted by the trial court on July 23,

---

[15]*See* Compl. on Construction Contract, Pierce County Superior Court Cause No. 91-2-11357-8, Clerk papers at 1-7; Br. of Appellant to Court of Appeals, Division II, at 2.

1993.[16] On June 9, 1994, Hillhaven settled with all parties except Aetna.[17]

This case was decided on a motion for summary judgment by the trial court, the Honorable Terry D. Sebring. In July 1994, Hillhaven appealed to the Court of Appeals, Division II, which concluded that "[b]ased on their testimony, a fact finder could find that Hillhaven did not know of existing damage on June 1, 1989, [the effective date of the Aetna policy] and that Hillhaven did not know, or have reason to know, of the likelihood of future damage."[18] The Court of Appeals, taking the facts in the light most favorable to Hillhaven, reversed and remanded the case to the trial court after finding it "involve[d] issues of material fact, and . . . the trial court erred in granting summary judgment."[19]

Aetna filed a petition for review with this Court on October 16, 1996. We granted it on March 5, 1997.

## DISCUSSION

### STANDARD OF REVIEW

"[S]ummary judgment may not be granted unless there is no genuine issue as to material facts."[20] "Where there are no relevant facts in dispute, the applicable standard of review is de novo review of lower court decisions regarding insurance coverage."[21] The Court must consider the facts and all reasonable inferences from those facts in the

---

[16]*See* Summ. J. of Dismissal of Aetna Insurance Company, Pierce County Superior Court Cause No. 91-2-11357-8, Clerk's Papers at 287-88.

[17]*See* Stipulation and Final J. of Dismissal, Pierce County Superior County Cause No. 91-2-11357-8, Clerk's Papers at 379-80.

[18]*Hillhaven Properties Ltd. v. Sellen Constr. Co.*, No. 18416-8-II, slip op. at 7 (Wash. Ct. App. Div. II, Aug. 23, 1996).

[19]*Id.*

[20]*See Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990) (citations omitted).

[21]*McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 730-31, 837 P.2d 1000 (1992) (citing *Stonewall Ins. Co.*, 115 Wn.2d at 682).

light most favorable to the nonmoving party.[22] The motion for summary judgment will be granted only if reasonable persons could reach only one conclusion from all the evidence.[23]

### KNOWN LOSS DOCTRINE

Petitioner Aetna claims the Court of Appeals incorrectly applied the "known loss" doctrine. Aetna asserts the court erred by focusing on whether the property owner knew or expected there would be continued damage after Aetna's policy took effect. It asserts the dispositive issue should have been whether there was a loss prior to the effective date of the policy instead of whether the parties had expected future damage.

The "known loss" doctrine is also referred to as the "loss-in-progress" doctrine.[24] We recognized the known loss doctrine in third party cases in *Public Utility District No. 1 v. International Insurance Company*.[25] In that case this Court stated the "known risk defense is premised on the principle that an insured cannot collect on an insurance claim for a loss that the insured subjectively knew would occur at the time the insurance was purchased."[26] The Court then stated, "[g]enerally, courts applying the known risk principle (also referred to as the known loss principle) must determine whether a particular occurrence was expected by the insured before the insurance coverage was obtained. This is a question of fact."[27] In that case the

[22]*See Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992) (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)).

[23]*Id.*

[24]"[T]he California Court of Appeals virtually equated the 'known loss' rule and the 'loss in progress' doctrine." *Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172, 177 (6th Cir. 1993).

[25]124 Wn.2d 789, 881 P.2d 1020 (1994).

[26]*Id.* at 805.

[27]*Id.* (citing *Insurance Co. of N. Am., Inc. v. United States Gypsum Co.*, 870 F.2d 148 (4th Cir. 1989)).

Court found that the trial court did not commit error in allowing a jury instruction which stated the " 'known risk' principle only applies if you find that the insureds knew that there was a substantial probability that they would be sued . . . . ."[28]

Petitioner Aetna, however, notes this Court has never addressed the known loss doctrine in the context of first party property insurance, but has addressed it only in a third party context. Respondent Hillhaven argues that in Washington there is no difference because in *PUD No. 1* this Court did not make a distinction between first party and third party insurance cases on the issue of expectancy.

Courts have noted the element of risk is fundamental to insurance coverage.[29] In discussing the difference between first parties and third parties, this Court has stated "[a] third party insurance involves protection for the policyholder for liability it incurs to someone else, while first party insurance involves protection for losses to the policyholder's own property."[30]

## Knowledge

Respondent argues there is a knowledge requirement which must be reached before the known risk doctrine applies. It argues the greater majority of cases considering the known risk defense have stated that knowledge is an issue of fact to be determined by the fact finder. The Court of Appeals relied on *PUD No. 1,* a third party case, when it articulated that the "doctrine precludes insurance coverage when the insured has subjective knowledge, in advance of the policy's effective date, that a specific loss

---

[28]*Id.* at 806.

[29]*See Time Oil Co. v. Cigna Property & Cas. Ins. Co.*, 743 F. Supp. 1400, 1412 (W.D. Wash. 1990).

[30]*Olds-Olympic, Inc. v. Commercial Union Ins. Co.*, 129 Wn.2d 464, 479, 918 P.2d 923 (1996) (citing *Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 909, 874 P.2d 142 (1994)).

has occurred or is expected to occur. Generally whether an insured has such knowledge is a question of fact."[31]

In *PUD No. 1* this Court cited two third party cases. The first is *Time Oil Co. v. Cigna Property and Casualty Insurance Co.*, a decision of the United States District Court for the Western District of Washington, which found there was no coverage because the process causing the loss had already begun and "Time Oil knew that there was a 'substantial probability' that it would be required to pay response costs relating to the contamination."[32] The necessary knowledge was acquired through the notice given by the Environmental Protection Agency to the party before the policy was purchased. The second case cited was *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, an Illinois Supreme Court case, which used similar language to deny coverage.[33]

The Court in *PUD No. 1* also cited *Insurance Co. of N. Am., Inc. v. United States Gypsum Co.* and stated it was analogous.[34] *Gypsum* is a first party insurance case where ground subsidence damage occurred during the policy period. However, the court found the insured did not have the requisite knowledge to invalidate the policy despite incidents of subsidence in previous years and the company's concern about the stability of the area. This determination was made upon the testimony of expert witnesses. The court noted that "subsidence is likely to occur on the earth above a mine but any resulting damage is at best a risk, not a certainty, especially where precautions are taken."[35] The court then stated the "fact that it is known that subsidence will occur does not mean that it will occur during the policy period. Moreover, there is a fundamental distinc-

---

[31]Slip op. at 6 (citing *PUD No. 1* at 805-06).

[32]743 F. Supp. 1400, 1415 (W.D. Wash. 1990).

[33]154 Ill. 2d 90, 607 N.E.2d 1204, 1211 (1992) (Outboard Marine possessed "*knowledge of a substantial probability* that claims would be made against it for PCB pollution . . . ." (emphasis added)).

[34]870 F.2d 148 (4th Cir. 1989).

[35]*Id.* at 151.

tion between the certainty of subsidence and the certainty of resulting loss."[36]

There are also several non-Washington first party cases which discuss knowledge as a requirement of the known risk defense. In *General Insurance Co. of America v. Lapidus* the United States Court of Appeals for the Ninth Circuit stated that one cannot take out a policy and recover on it if the policy is bought after the property is destroyed, even if the insured had no knowledge of the damage.[37] In that case, even though the property was damaged and the insured had some knowledge, the court ruled in favor of coverage because the insurer had been notified through the application process of the potential problem. The court stated there might have been a different result if the insured had been fully advised of their predicament.[38]

Another federal case is *Underwriters Subscribing to Lloyd's Insurance Cert. No. 80520 v. Magi, Inc.*, in the United States District Court for the Eastern District of Washington,[39] a first party apple spoilage case. In that case the court stated that according to the modern rule, "[a] loss caused by a defective design is fortuitous if the insured had reason to rely on it."[40] The court noted that some courts have determined fortuity based on knowledge gained in hindsight, but the modern rule rejects this approach.[41] Although acknowledging this was not the first time the insured had experienced this type of loss, the court nevertheless found the loss fortuitous.

---

[36]*Id.* at 152.

[37]*See General Ins. Co. of Am. v. Lapidus*, 325 F.2d 287, 288 (9th Cir. 1963).

[38]*See id.* at 290.

[39]790 F. Supp. 1043 (E.D. Wash. 1991).

[40]*Id.* at 1049 (quoting *Pillsbury Co. v. Underwriters at Lloyd's*, 705 F. Supp. 1396, 1400 (D. Minn. 1989)). Other courts have found fortuitous loss to be a variant of the loss in progress rule. *See Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172, 177 (6th Cir. 1993).

[41]*See* 790 F. Supp. at 1048.

Third party cases cited by Respondent also confirm the requirement of knowledge. In *Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, the United States Court of Appeals for the Sixth Circuit stated "[c]onsiderable precedent supports the notion that a loss which has already occurred may be insured against *as long as it is unknown* to the insured at the time the insurance contract is entered into."[42] The court stated that "[b]ecause the 'loss in progress' doctrine also requires foreknowledge of loss or an awareness of an immediate threat of loss on the part of the insured, the district court erred in granting summary judgment when the material issue of the scope of Inland Waters' foreknowledge of the eventual loss remained unresolved."[43]

## Manifestation

Petitioner Aetna argues that its insurance policy does not provide coverage for water damage to Narrows Glen because the loss manifested itself prior to the effective date of Aetna's policy. Petitioner asserts the damage occurring after issuance of its policy was continuation of loss occurring prior to issuance of its policy and thus was not a new loss for which it should be responsible.[44] It argues that "[a] loss that persistently defies repair and continues to cause damage over a period of time is not a *new* and *distinct* loss each time the problem reappears."[45] Aetna claims it is irrelevant that the causes of the problems and the full extent of the damage were not discovered until after its policy took effect.

Petitioner Aetna cites several cases to support its argument, none of which is persuasive. In *Fireman's Fund In-*

---

[42]*Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172, 176 (6th Cir. 1993) (quoting *Great Southwest Fire Ins. Co. v. Watt Indus., Inc.*, 280 Cal. Rptr. 249, *review denied and ordered not to be officially published* (1991).

[43]*Id.* at 178.

[44]Supplemental Br. of Pet'r Aetna at 1.

[45]*Id.* at 2.

*surance Co. v. Aetna Casualty and Surety Co.* a California Court of Appeals decision, citing a previous case, the court stated "the 'general rule' that the date of manifestation determines which carrier must indemnify a loss and the 'loss-in-progress rule,' this court held 'as between two first [ ]party insurers, one of which is on the risk on the date of the first manifestation of property damage, and the other on the risk after the date of the first manifestation of damage, the first insurer must pay the entire claim.' "[46] The court found the damage occurred during the life of the first policy, but the cause was not determined until after issuance of the second policy. That case was decided upon stipulated facts between two insurers. The court stated it was a third party case. Citing another case, the court stated "that fact [that the case is between two insurers] is [ ] critical" because "there was no need to focus on the insurance policy language interpreted in light of the insured's reasonable expectation of coverage."[47]

In *Advanced Micro Devices, Inc. v. Great American Surplus Lines Insurance Co.* another California Court of Appeals decision, the court found there was no coverage because the loss was known to the insured at the time the policy was issued.[48] In that case the policy was purchased after reports by engineers indicating the existence of substantial problems. Additionally, there was no attempt to remedy the problems before purchase of the second policy.[49]

Petitioner also cited *Larkspur Isle Condominium Owners' Association, Inc. v. Farmers Insurance Group*, another California Court of Appeals decision, which stated the "manifestation rule incorporates the loss-in-progress rule: the principle 'that an insurer cannot

---

[46]223 Cal. App. 3d 1621, 1625-26, 273 Cal. Rptr. 431 (1990) (citation omitted) (quoting *Home Ins. Co. v. Landmark Ins. Co.*, 205 Cal. App. 3d. 1388, 1392-93, 253 Cal. Rptr. 277 (1988)).

[47]*Id.* at 1628.

[48]199 Cal. App. 3d 791, 245 Cal. Rptr. 44 (1988).

[49]*Id.* at 797-98.

insure against a loss that is known or apparent to the insured.' "[50] The court observed that the California Supreme Court has adopted the manifestation rule as a method for allocating indemnity between successive first party insurers for progressive losses spanning multiple policy periods.[51] "Under that rule, liability for a progressive loss falls on the insurer on the risk at the time the loss manifests, i.e., at 'that point . . . when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered'."[52] In that case there was evidence of "totally soaked floors [and] walls," a unit that had been "totally flooded," and "fungus and mushrooms growing in an obviously water-soaked environment" before the policy was purchased.[53] The court found that appreciable loss does not depend upon discovery that the damage constitutes a covered loss under the policy.[54]

A frequently cited first party case is *Prudential-LMI Commercial Insurance v. Superior Court.*[55] In that case the California Supreme Court addressed the question "when there are successive insurers, who is responsible for indemnifying the insured for a covered loss when the loss is not discovered until several years after it commences?"[56] The court concluded that "in a first party property damage case (i.e., one involving no third party liability claims), the carrier insuring the property at the time of manifesta-

---

[50]31 Cal. App. 4th 106, 37 Cal. Rptr. 2d 3, 5 (1994). (quoting *Prudential-LMI Commercial Ins. v. Superior Court*, 51 Cal. 3d 674, 695 n.7, 798 P.2d 1230, 274 Cal. Rptr. 387 (1990)).

[51]*See id.* at 5.

[52]*Id.*

[53]*Id.* at 4.

[54]*See id.* at 6.

[55]51 Cal. 3d 674, 798 P.2d 1230, 274 Cal. Rptr. 387 (1990).

[56]*Id.* at 1232.

tion of property damage is solely responsible for indemnification once coverage is found to exist."[57] The court noted:

> Several first party cases have acknowledged support for a delayed discovery rule that holds an insured responsible for initiating a claim based on the date on which the insured could reasonably have concluded his property suffered a loss. These cases agree that the term "inception of the loss" means that point in time at which appreciable damage occurs so that a reasonable insured would be on notice of a potentially insured loss.[58]

The court defined inception of loss as that "point . . . when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that [that person's] notification duty under the policy has been triggered. We conclude that the definition of 'manifestation of the loss' must be the same."[59] The court concluded it is a matter for the trier of fact to determine when appreciable damage occurs "such that a reasonable insured would be on notice of a potentially insured loss . . . ."[60]

### Applying the Facts

In this case, Aetna relies upon the letter from Chris Higgins, maintenance supervisor for Hillhaven, to Bill Boysen, project director for Sellen on the Narrows Glen construction, to establish that Narrows Glen was aware of the substantial problem of water seepage and window damage.[61] However, in the affidavit of Holly Peterson, executive director of Narrows Glen when the letter was writ-

---

[57]*Id.*

[58]*Id.* at 1237.

[59]*Id.* at 1247.

[60]*Id.* at 1238.

[61]*See* Letter to Bill Boysen at Sellen Construction Company from Chris Higgins, maintenance supervisor at Narrows Glen, dated Jan. 16, 1989, Clerk's Papers at 176.

ten, she stated that "Sellen appeared slow in correcting stains which appeared near the windows of five or six apartments" so she directed Mr. Higgins to write the letter to encourage follow-up.[62] She then stated "[t]he instances of water stain were thought to be readily repairable and were essentially a matter of annoyance."[63]

■ There are other affidavits in the record from the Hillhaven staff indicating the problems were considered insignificant before the Aetna policy went into effect. The strongest evidence that Hillhaven had prior knowledge of the problem is the letter from Mr. Higgins to Sellen Construction. Respondent argues that additional evidence is required to establish it had knowledge. In *Smith v. Yamashita* this Court stated

> "[I]t may be well again to call attention to our rule with reference to the character of evidence necessary to establish the affirmative of an issue. We have long since held that a scintilla of evidence, as these terms are commonly defined, is not sufficient for that purpose; that, on a question of fact, before the trier of the fact is warranted in finding the fact established, there must be substantial evidence in its support. This does not mean that the fact sought to be established must be supported by direct evidence, or mean that it may not be established by the proof of facts from which the fact sought to be established is necessarily or reasonably inferred, but it does mean that a disputed question of fact, by whatever character of evidence it is sought to be proven, must have in its support that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact, before it can be said to be established."[64]

Generally courts have held that whether an insured had the requisite knowledge of a preexisting condition is a question of fact for the fact finder. The letter from Chris

---

[62]*See* Aff. of Holly Peterson, Clerk's Papers at 272.

[63]*Id.*

[64]12 Wn.2d 580, 582-83, 123 P.2d 340 (1942) (quoting *Thomson v. Virginia Mason Hosp.*, 152 Wash. 297, 277 P. 691 (1929)).

Higgins is not of itself sufficient to establish conclusively that Hillhaven had the necessary knowledge of water seepage and damage at the time the Aetna policy went into effect to justify granting summary judgment in favor of Aetna under the premise that there is no unresolved material fact in the case.

## SUMMARY AND CONCLUSIONS

■ Washington has adopted the "known risk" doctrine in third party cases. The doctrine is "premised on the principle that an insured cannot collect on an insurance claim for a loss that the insured subjectively knew would occur at the time the insurance was purchased."[65]

Washington's requirement of knowledge under the known risk doctrine is consistent with the cases the parties cited to this Court. This requirement applies in first party and third party cases. California courts which have addressed the distinction between first party and third party claims also require knowledge by the insured before the court will allow the known risk defense.

In a review of the knowledge requirement in several jurisdictions, the most significant distinction has been articulation of the extent of knowledge required. Third party cases before the Washington and federal courts have stated the insured must know with "substantial probability" of loss or have "foreknowledge of loss."[66] In first party cases, California courts have required a "sufficient [problem] to put a reasonable person on notice" or the occurrence of "appreciable damage."[67] In determining

---

[65]*PUD No. 1 v. International Ins. Co.*, 124 Wn.2d 789, 881 P.2d 1020 (1994).

[66]*See PUD No. 1 v. International Ins. Co.*, 124 Wn.2d 789, 881 P.2d 1020 (1994); *see Time Oil Co. v. Cigna Property & Cas. Ins.*, 743 F. Supp. 1400 (W.D. Wash. 1990); *see also Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204, 1211 (1992); *see also Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172, 178 (6th Cir. 1993).

[67]*See United States Fid. & Guar. Co. v. American Ins. Co.*, 169 Ind. App. 1, 345 N.E.2d 267 (1976); *see also Larkspur Isle Condominium Owners' Ass'n, Inc. v. Farmers Ins. Group*, 31 Cal. App. 4th 106, 37 Cal. Rptr. 2d 3, 5 (1994); *Prudential-LMI Commercial Ins. v. Superior Court*, 51 Cal. 3d 674, 798 P.2d 1230, 274 Cal. Rptr. 387 (1990).

whether a party had notice, these courts have not considered past problems to be determinative in finding the necessary knowledge to preclude coverage.[68]

The California Supreme Court has also required knowledge in considering when a problem manifests itself.[69] The California courts have used the reasonable person standard in making the determination when the person should have been put on notice.[70]

Generally courts have stated that whether an insured had the requisite knowledge is a question of fact for the fact finder.[71] The letter from Chris Higgins is not of itself sufficient to establish that Hillhaven had the necessary knowledge of water seepage and damage at the time the Aetna policy went into effect to justify granting summary judgment in favor of Aetna under the premise that there is no unresolved material fact.

We affirm the Court of Appeals, Division II, which reversed the summary judgment granted to Respondent Aetna Insurance Company by the Pierce County Superior Court on the question whether Aetna is responsible for coverage under its policy for water seepage and leakage damage incurred by Hillhaven Properties, Limited at its Narrows Glen retirement facility after Aetna became insurer under the master policy for Hillhaven.

[68]*See Insurance Co. of N. Am., Inc. v. United States Gypsum Co.*, 870 F.2d 148 (4th Cir. 1989); *see also General Ins. Co. of Am. v. Lapidus*, 325 F.2d 287, 288 (9th Cir. 1963); *Underwriters Subscribing to Lloyd's Ins. Cert. No. 80520 v. Magi, Inc.*, 790 F. Supp. 1043 (E.D. Wash. 1991).

[69]*See Larkspur Isle Condominium Owners' Ass'n Inc. v. Farmers Ins. Group*, 31 Cal. App. 4th 106, 37 Cal. Rptr. 2d 3 (1994).

[70]*See id.; see also Prudential-LMI Commercial Ins. v. Superior Court*, 51 Cal. 3d 674, 798 P.2d 1230, 274 Cal. Rptr. 387 (1990).

[71]*See id.; see also PUD No. 1 v. International Ins. Co.*, 124 Wn.2d 789, 881 P.2d 1020 (1994); *see also Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172 (6th Cir. 1993); *Queen City Farms v. Central Nat'l Ins.*, 126 Wn.2d 50, 882 P.2d 703 (1994); *cf. Larkspur Isle Condominium Owners' Ass'n, Inc. v. Farmers Ins. Group*, 31 Cal. App 4th 106, 37 Cal. Rptr. 2d 3, 5 (1994); *see also Advanced Micro Devices, Inc. v. Great Am. Surplus Lines Ins. Co.*, 199 Cal. App. 3d 791, 245 Cal. Rptr. 44 (1988) (these are cases where the court granted summary judgment because the knowledge was clear).

DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.

[No. 63972-8.  En Banc.]
Argued March 4, 1996.    Decided December 4, 1997.