153 P.3d 877 (2007)
MUTUAL OF ENUMCLAW INSURANCE COMPANY and Commercial Underwriters Insurance Company, Appellants,
v.
USF INSURANCE COMPANY, Respondent.
No. 57866-9-I.
Court of Appeals of Washington, Division 1.
February 26, 2007.
*878 James Morton Beecher, David R. Collins, Law Offices of Hackett, Beecher, & Hart, Seattle, Counsel for Appellants.
*879 John Earl Lenker, Mikkelberg Broz Wells & Fryer, Seattle, Counsel for Respondents.
AGID, J.
¶ 1 This is an insurance contribution case brought by two settling insurers against a non-participating insurer to which the insured did not tender claims arising from construction defects litigation. We hold that when the insured assigns its rights against other potentially-liable entities to the settling insurers, they stand in the shoes of the insured and may pursue a claim against the non-participating insurer under the late tender rule adopted in Unigard Insurance Co. v. Leven.[1]
¶ 2 Mutual of Enumclaw Insurance Company (MOE) and Commercial Underwriters Insurance Company (CUIC) settled construction defect litigation brought against their insured, Dally Homes. As part of the settlement, Dally Homes assigned all of its rights under this claim to MOE and CUIC. USF Insurance Company (USFIC) also insured Dally Homes, but Dally did not tender a claim to USFIC. Two years later, MOE and CUIC brought a claim for contribution against USFIC. MOE and CUIC brought a motion for partial summary judgment to prevent USFIC from asserting a known loss defense, but the trial court denied the motion because there were genuine issues of material fact concerning what Dally knew about the claim. The trial court later dismissed all claims against USFIC on summary judgment, ruling that USFIC was excused from any duty of contribution because Dally Homes selectively chose not to tender a claim under this policy.
¶ 3 The trial court properly denied MOE's and CUIC's partial motion for summary judgment because Dally Homes' subjective knowledge of the construction defect claim is a material issue of fact. But dismissing the claims against USFIC was an error of law because late tender does not relieve an insurer of its obligations to its insured absent actual prejudice. The late tender rule applies here because, as assignees, MOE and CUIC stood in Dally Homes shoes and were entitled to choose whether to tender the claim and to have the benefit of the late tender rule.

FACTS
¶ 4 In the mid 1990's, Dally Homes Inc. built Windsong Arbor, a condominium complex located near Kent, Washington.[2] The final certificates of occupancy were issued from 1996 through 1998. In December 1999, the Board of Directors (Board) of the Windsong Homeowners Association (HOA) hired Mark Jobe, a construction expert, to inspect the building for construction defects. James Skeen, the HOA Board President, also began to interview attorneys about a potential lawsuit against Dally Homes. Jobe presented his conclusions to the Board on January 20, 2000.
¶ 5 In November or December 1999, Richard Beal, an insurance attorney representing Don Dally on general insurance matters and some development projects, received a call from Cheryl Dittamore, a property manager with Suhrco Property Management with whom Beal and Don Dally had worked on previous occasions. Dittamore told him that the four year statute of limitations was about to run on one of her projects and that Skeen might call him about the matter. Soon after, Skeen called Beal to discuss his representing the HOA against Dally Homes. Beal told him that he could not represent the HOA because he represented Dally Homes. Skeen gave Beal permission to tell Don Dally about the HOA's concerns. In his deposition, Beal could not remember when he spoke with Dally concerning the information he received about the potential Windsong Arbor claim. He said he called Dally before January 18, but the call may have simply been a voicemail asking Dally to return his call. At the time of his telephone conversation with Skeen, Beal testified that he had an *880 ongoing attorney-client relationship with Dally. He advised Dally about insurance matters, acted as his representative, and kept an "ear to the ground" about potential problems with Dally's development projects. Around the same time, Don Dally contacted Parker Smith & Feek (PS & F), an insurance broker, and obtained a USFIC general liability policy for Dally Homes that became effective on January 18, 2000.
¶ 6 In mid-January 2000, Barbara Hammermeister, a PS & F broker, spoke with Beal about the Windsong Arbor HOA claims. Beal instructed her not to tender to USFIC because he believed
it would not be appropriate to tender to USF. . . .
. . . .
. . . I would have regarded it as a violation of the good faith statute for me to have tendered to USF. . . .
. . . [T]here is zero question in my mind but that, as a representative of Dally Homes, I knew about this claim before January 18 and I was not about to tender what I knew was a known loss, and I knew from my experience as a lawyer what would have been, I would say, a grossly improper tender.
. . . .
. . . I would have regarded it as a fraud. Hammermeister notified MOE, CUIC, and two other insurers who wrote coverage for Dally Homes. She did not tender a claim to USFIC.
¶ 7 Two years later, on January 30, 2002, Dally Homes, the Windsong Partnership, MOE, and CUIC entered into a settlement agreement with the HOA for $3,899,095 plus the costs incurred by Dally Homes to investigate and defend against the claims. As part of the settlement, Dally and the Windsong Partnership assigned their rights and claims against other entities to MOE and CUIC.[3] The agreement did not mention the USFIC policy. MOE and CUIC later brought a contribution suit against other insurers of Dally Homes and their subcontractors. They did not include USFIC in this suit. USFIC did not participate in the defense, investigation, or the settlement of the HOA lawsuit or participate in the contribution suit that followed the 2002 settlement.
¶ 8 After the contribution and subrogation actions were completed, MOE and CUIC discovered the USFIC policy and its potential coverage for the Windsong construction defect case. In 2004, MOE and CUIC filed a subrogation and contribution claim against USFIC arising out of the Windsong HOA claim. MOE and CUIC brought a motion for partial summary judgment against USFIC to prevent it from raising a known loss defense at trial. On November 10, 2005, the court denied the motion, finding that there were material issues of fact concerning Dally Homes' knowledge of the claims before binding the USFIC policy.
¶ 9 On January 31, 2006, the trial court granted USFIC's motion for summary judgment, dismissing all of MOE's and CUIC's claims with prejudice. Citing a Montana case, Casualty Indem. Exch. Ins. Co. v. Liberty Nat'l Fire Ins. Co., the trial court concluded that USFIC was "excused from its duty to perform under its policy or to contribute to a settlement procured by a coinsurer" because Dally Homes affirmatively decided not to tender the claim.[4] On February 10, 2006, the court denied MOE's and *881 CUIC's motion for reconsideration. MOE and CUIC appeal both orders.

DISCUSSION
¶ 10 Summary judgment orders are reviewed de novo and are proper if, after reviewing all the documents on file, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[5] All facts and inferences are viewed in a light most favorable to the nonmoving party.[6] Summary judgment is proper when reasonable persons could only reach the conclusion that the nonmoving party is unable to establish any facts that would support an essential element of its claim.[7]
Late Tender
¶ 11 On January 31, 2006, the trial court granted USFIC's motion for summary judgment, dismissing all of MOE's and CUIC's claims with prejudice. The trial court rejected the late tender rule discussed in Unigard Ins. Co. v. Leven and Griffin v. Allstate Ins. Co.,[8] reasoning that those cases applied to the duty of an insurer to its insured. Finding that Dally Homes affirmatively decided not to tender a defense to USFIC, the trial court found that "where the insured has failed to tender the defense of an action to its insurer, the latter is excused from its duty to perform under its policy or to contribute to a settlement procured by a coinsurer."[9]
¶ 12 Contribution is an insurer's right to recover from a co-obligor its proportionate share in the same liability.[10] Generally, when fewer than all of the insurers on a risk pay more than their equitable share of the obligation, insurers seek compensation from co-insurers who did not pay their respective share.[11] In an insurance contribution action, the issue is whether a non-participating coinsurer has a legal obligation to provide a defense or indemnity for a claim or action arising before the date of settlement.[12] MOE and CUIC argue that they shared a common liability with USFIC to defend and indemnify Dally Homes and are entitled to contribution from USFIC for its proportional share of that common obligation. They argue the trial court improperly dismissed their claim by not applying the late tender rule of Griffin and Unigard. They acknowledge that insurers are generally not required to defend an insured until a defense is requested, but assert the late tender rule prevents USFIC from avoiding coverage unless it demonstrates actual prejudice.
¶ 13 USFIC contends it is not trying to avoid coverage. Rather, it asserts that the late tender rule does not apply because Dally Homes elected not to tender a claim. But USFIC does not cite to any Washington cases that stand for the proposition that an insured's unilateral decision not to tender a claim to one of its insurers alleviates the insurer's obligation to co-insurers.[13] Further, *882 its arguments concerning an insured's right to decide whether to tender a claim do not apply on these facts because Dally Homes assigned its rights to MOE and CUIC, who thereafter stood in Dally Homes' shoes as its assignees.
¶ 14 In Washington, an insurer's duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability on the insured that is within the policy's coverage.[14] An insured must affirmatively inform an insurer that its participation is desired because an insurer cannot be expected to anticipate when or if an insured will make a claim for coverage.[15] When an insured makes a late tender, the insurer must demonstrate actual prejudice before it will be relieved from its duties to its insured.[16] In Unigard we held that even when an insured breaches an insurance contract, the insurer's duty to defend remains unless it proves actual and substantial prejudice.[17] "[P]rejudice is an issue of fact and will seldom be established as a matter of law."[18] Likewise, in Griffin we applied the late tender rule and held an insurer could be liable for pre-tender fees and costs even though the insured did not tender the claim until after they lost one lawsuit and a second suit had been filed.[19]
¶ 15 Here, Dally Homes assigned all of its rights against all non-participating primary and additional insureds to MOE and CUIC. This assignment included rights it would have had under the USFIC policy. Because MOE and CUIC thus became Dally Homes for the purpose of asserting its rights, they could tender late and receive the benefits of the late tender rule described in Unigard. Casualty, the Montana case on which the trial court relied, did not concern the rights of an assignee and cannot control here. Under these facts, the Casualty rule is inconsistent with Washington's late tender rule. We hold that MOE and CUIC may maintain an action against USFIC for contribution to the Windsong settlement. We of course express no opinion about the merits of their claims.
Known Loss Defense
¶ 16 As a preliminary matter, USFIC argues an order denying partial summary judgment cannot be reviewed under RAP 2.2 and is not a proper subject for discretionary review under RAP 2.3. We have the authority to accept review of this matter pursuant to RAP 2.3(b) and apply the ordinary de novo standard of review for summary judgments to this motion.[20]
¶ 17 The known loss doctrine, as recognized in Public Utility District No. 1 v. International Insurance Company, prevents an insured from collecting on an insurance policy for losses that he or she subjectively knew would occur at the time the insurance policy was purchased.[21] To prevail on the defense, the court must find the insured expected a specific occurrence before it obtained insurance coverage.[22] This is ordinarily a question of fact,[23] and summary judgment is improper when the scope of the insured's knowledge is unresolved.[24]
*883 ¶ 18 MOE and CUIC argue that they were entitled to judgment as a matter of law because, without proof of Dally's subjective knowledge of the Windsong HOA claim prior to January 18, USFIC could not prove it was a known loss. They base this assertion on a number of statements Beal made during his deposition, particularly his limited memory of the substance of his conversations with Dittamore and Skeen and the timing of his call to Dally. They argue that Beal was neither Dally's nor Dally Homes' lawyer when he received these phone calls, so his knowledge cannot be imputed to Dally. They also contend that USFIC presented no evidence that Dally knew of the claim and USFIC cannot prove knowledge because the HOA Board did not learn of the defects until Jobe presented his findings on January 20, 2000, two days after the USFIC policy was bound. Alternatively, if Beal's knowledge can be imputed to Dally, they argue that Beal's mere conclusions about the possibility of a suit are insufficient to raise a genuine issue of fact.
¶ 19 USFIC argues genuine issues of material fact remained. It asserts Dally knew the construction defect suit was imminent because Beal, as Dally Homes' attorney, received a call from Windsong HOA President Skeen in December 1999 about the pending claim. And it contends Loren Kenkman notified Dally that the HOA was preparing to bring suit a week and a half or two weeks before the January 20, 2000 HOA meeting.
¶ 20 We agree with USFIC that Dally's subjective knowledge and the agency relationship between Beal, Dally and Dally Homes were disputed issues of fact below. MOE's and CUIC's reliance on Beal's testimony underscores those disputes. The trial court properly denied their motion because Dally's subjective knowledge of the claim, the timing of that knowledge and the agency relationship with Dally are factual questions which could not have been resolved on summary judgment.[25]

CONCLUSION
¶ 21 We reverse the trial court's order dismissing MOE's and CUIC's claims against USFIC and affirm its order denying partial summary judgment on the issue of USFIC's known loss defense. We remand the case to the trial court for further proceedings.
BAKER, BECKER, JJ, concur.
NOTES
[1] 97 Wash.App. 417, 983 P.2d 1155 (1999), review denied, 140 Wash.2d 1009, 999 P.2d 1263 (2000).
[2] Dally Homes was the developer and affiliated entity; Windsong Arbor, LLP (Partnership) was the declarant for Windsong Arbor. Both the Partnership and Dally Homes are controlled by Don Dally.
[3] Section 6 of the settlement agreement between Dally Homes, MOE and CUIC states:

Dally also claims to be insured under policies issued by Assurance Company of America ("ACOA"), American States Insurance Company ("American States"), and/or Safeco Insurance Company of America ("Safeco"). Dally also claims to have rights against Meier Insurance Agency, Inc. ("Meier") in connection with its issuance of a Certificate of Insurance. Dally may also have rights under other policies of insurance. Pursuant to WAC 284-30-330(6), Settling Insurers herein are agreeable to advance funding for the settlement of the claims for Windsong Arbor Homeowners Association pursuant to the December 13, 2001 agreement in return for an assignment of Dally's rights against non-participating primary or Additional Insured insurers, Meier, and any excess or umbrella insurers who may be responsible for a portion of the settlement of the claims of the Homeowners Association.
(Emphasis omitted.)
[4] 902 F.Supp. 1235, 1239 (D.Mont.1995).
[5] CR 56(c); Lybbert v. Grant County, 141 Wash.2d 29, 34, 1 P.3d 1124 (2000).
[6] Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998).
[7] Young v. Key Pharms., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[8] 108 Wash.App. 133, 141-42, 29 P.3d 777 (2001) (citing Pub. Util. Dist. No. 1 v. Int'l Ins. Co., 124 Wash.2d 789, 804, 881 P.2d 1020 (1994)), review denied, 146 Wash.2d 1005, 45 P.3d 551 (2002).
[9] Casualty, 902 F.Supp. at 1239.
[10] Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal.App.4th 1279, 1293, 77 Cal.Rptr.2d 296 (1998).
[11] See Sound Built Homes v. Windermere Real Estate/South, Inc., 118 Wash.App. 617, 633-35, 72 P.3d 788 (2003); see also Fireman's Fund, 65 Cal.App.4th at 1293, 77 Cal.Rptr.2d 296.
[12] Safeco Ins. Co. of Am. v. Superior Court, 140 Cal.App.4th 874, 44 Cal.Rptr.3d 841, review denied, 2006 Cal. LEXIS 10468 (2006).
[13] According to Couch on Insurance, where double coverage is involved, an insurer must inquire of its insured whether other insurance exists in order to assure that other insurers have an opportunity to protect their rights. Couch on Insurance § 218.20 (citing Brown v. Selective Ins. Co., 311 N.J.Super. 210, 709 A.2d 812 (1998)). But an insurer may be relieved of this duty to inquire and expect contribution, despite a co-insurer's ignorance of incident, when an insured deliberately chooses to inform one insurer but not the other. Id. (citing Am. Star Ins. Co. v. Allstate Ins. Co., 12 Or.App. 553, 508 P.2d 244 (1973)).
[14] Griffin, 108 Wash.App. at 140, 29 P.3d 777 (citing Unigard, 97 Wash.App. at 425, 983 P.2d 1155).
[15] Id. (citing Unigard, 97 Wash.App. at 427, 983 P.2d 1155).
[16] Id.
[17] Unigard, 97 Wash.App. at 427, 983 P.2d 1155.
[18] Tran v. State Farm Fire & Cas. Co., 136 Wash.2d 214, 228, 961 P.2d 358 (1998) (citing Canron, Inc. v. Federal Ins. Co., 82 Wash.App. 480, 491, 918 P.2d 937 (1996), review denied, 131 Wash.2d 1002, 932 P.2d 643 (1997)).
[19] Griffin, 108 Wash.App. at 136, 29 P.3d 777.
[20] See Kershaw Sunnyside v. Interurban Lines, 156 Wash.2d 253, 261, 126 P.3d 16 (2006); see also Am. States Ins. Co. v. Symes of Silverdale, Inc., 150 Wash.2d 462, 78 P.3d 1266 (2003).
[21] 124 Wash.2d 789, 805, 881 P.2d 1020 (1994).
[22] Hillhaven Props. Ltd. v. Sellen Constr. Co., 133 Wash.2d 751, 758, 948 P.2d 796 (1997) (citing Pub. Util. Dist. No. 1, 124 Wash.2d at 806, 881 P.2d 1020).
[23] Id.
[24] Hillhaven, 133 Wash.2d at 762, 948 P.2d 796 (citing Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co., 997 F.2d 172, 176 (6th Cir.1993)).
[25] See Hillhaven, 133 Wash.2d at 762, 948 P.2d 796; O'Brien v. Hafer, 122 Wash.App. 279, 93 P.3d 930 (2004), review denied, 153 Wash.2d 1022, 108 P.3d 1229 (2005).