Filed 6/20/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MARK BENNETT,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>OHIO NATIONAL LIFE<br>ASSURANCE CORPORATION,<br><br>      Defendant and Respondent. | A166049<br><br>(Marin County Super. Ct.<br>No. CIV1903075) |

  This appeal arises out of plaintiff Mark Bennett's action against respondent Ohio National Life Assurance Corporation (Ohio National). Under Bennett's disability insurance policies, monthly benefits were payable for life if he was totally disabled due to injury; if due to sickness, benefits would only be paid until the age of 65. Ohio National initially approved Bennett's January 2014 claim that he was totally disabled due to an injury sustained when thrown from his horse. But on June 8, 2015, Ohio National notified him of its determination that his disability was due to a sickness, not an injury. Ohio National continued to pay disability benefits until September 3, 2018, the policy year Bennett turned 65 years old.

  On August 13, 2019, Bennett sued for breach of contract and breach of the implied covenant of good faith and fair dealing. The trial court granted summary judgment to Ohio National after concluding the claims were barred by the statutes of limitation — four years for breach of contract and two years for breach of the implied covenant of good faith and fair dealing. Both causes

1

of action, the court concluded, accrued when Ohio National issued an unconditional denial of liability on June 8, 2015, not when benefits ceased on September 3, 2018.

On appeal, Bennett argues the trial court erred because his causes of action did not accrue until all elements — including actual damages — were complete. Bennett contends he suffered no harm as of June 8, 2015, because Ohio National continued to pay disability benefits. Only on September 3, 2018 — when Ohio National began withholding benefits, and Bennett thereby incurred damages — did his causes of action accrue. We agree and reverse.

## BACKGROUND

Bennett, an oral and maxillofacial surgeon, purchased three disability income insurance policies from Ohio National in 1984, 1991, and 1995. The policies provided coverage if he became totally disabled or had a total disability — the inability "to do the substantial and material tasks" of his job due to injury or sickness. Injury is defined as an "[a]ccidental injury sustained while this policy is in force," and sickness is defined as a "[s]ickness diagnosed or treated while this policy is in force." Income, defined as the monthly benefit amount to be paid under the contract, "is paid at the end of each month of Disability for which it is due."

The policies each articulated a maximum benefit period, the "longest period of time that Income will be paid for one Disability or for a combined period of Residual and Total Disability from the same or related cause." Bennett would receive lifetime benefit payments if the total disability either "(a) starts before Age 55 due to Sickness; or (b) starts before Age 65 due to Injury." Total disability due to sickness starting *on or after* age 55, however, would result in payments ending at age 65.

2

In 2006, when Bennett was 53 years old, he was thrown from a horse. He sustained injuries to his left shoulder and collarbone. He underwent surgery to repair a tear in his shoulder but had ongoing numbness and tingling in his left hand. Initially, he was able to continue working by changing certain operating techniques and using different tools. Despite accommodations, medication, and physical therapy, he later developed pain in his left hand. By 2012, he had chronic pain and later reduced the number of surgeries he performed and decreased his patient load. He stopped working entirely in 2014.

Bennett filed a claim with Ohio National reporting he was totally disabled; that is, he was unable to work as an oral surgeon because of a physical condition he developed from his 2006 accident. In a letter dated April 2014, Ohio National approved the claim for total disability, effective January 2, 2014, and provided him benefits beginning on that date. The letter noted Ohio National would continue to evaluate the cause of the claimed disabling condition to determine whether it was due to sickness or injury.

On June 8, 2015, Ohio National sent Bennett another letter. This one stated it had determined his condition was due to sickness — a degenerative disc disease, causing compression of nerve roots and thus tingling and numbness in the left hand — rather than injury. Because his total disability started after the age of 55, Bennett's benefit would not be paid for life, but would instead terminate on the first day of the policy year upon reaching age 65 — September 3, 2018.

On several occasions between June 2015 and September 2018, Ohio National requested Bennett complete a "Continuance of Disability Statement," documenting his current work status, and provide a physician's

progress statement certifying his restrictions, limitations, and treatments. Bennett complied with the requests and received monthly benefits until September 2018. Bennett also asked Ohio National to reconsider its decision, disputing its conclusion that his disability was due to sickness. In April 2019, after reviewing previously available information as well as new information submitted by Bennett, Ohio National informed him its determination remained unchanged.

In August 2019, Bennett sued for breach of contract and breach of the implied covenant of good faith and fair dealing. Ohio National moved for summary judgment arguing the statutes of limitation barred the claims. In opposition, Bennett argued the time to sue did not begin to run until September 3, 2018, when he suffered actual damages in the form of losing replacement income and assets essential to his health and welfare.

The trial court granted summary judgment. Relying on *Neff v. New York Life Insurance Co.* (1947) 30 Cal.2d 165 (*Neff*), the court explained a "suit may be commenced upon an insured's claim after the insurance company's unconditional denial of liability thereon, when all facts essential to the statement of a cause of action are within the knowledge of the aggrieved party." (*Id*. at p. 175.) The court also noted an unreported federal decision, *Flynn v. Paul Revere Ins. Group* (9th Cir. 2001) 2 Fed.Appx. 885 (*Flynn*), in which the court determined the plaintiff's causes of action related to lifetime disability benefits accrued when the insurance company denied the right to benefits, not when the insurance company stopped making monthly payments. (*Id*. at p. 886.) Because there was nothing ambiguous or tentative in Ohio National's June 2015 letter indicating it had determined Bennett's total disability was due to sickness nor any indication it was reserving final

4

judgment, the court determined Bennett's claims accrued in June 2015 and were time-barred.

## DISCUSSION

The parties dispute the date the claims accrued. A breach of contract claim is subject to a four-year statute of limitations. (Code Civ. Proc. § 337, subd. (a), undesignated statutory references are to this code.) A claim for the breach of the implied covenant of good faith and fair dealing is subject to a two-year statute of limitations. (§ 339(1).) Ohio National contends the claims accrued on June 8, 2015 — the date it denied his disability was due to injury. Bennett contends his claims accrued on September 3, 2018 — the date Ohio National stopped paying benefits. Who is correct resolves whether the August 13, 2019 complaint was filed too late. Bennett has the better argument.

Summary judgment is proper when there is "no triable issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant may demonstrate the plaintiff's cause of action has no merit by showing one or more elements cannot be established or there is a complete defense to the cause of action. (§ 437c, subd. (p)(2); *Aguilar*, at p. 849.) For example, a defendant moving for summary judgment based on statute of limitation grounds must demonstrate the limitation period has expired. (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 316.) Summary judgment is proper where the undisputed material facts demonstrate a claim is time-barred. (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1142 (*Love*).) We independently review a trial court's order granting summary judgment. (*County of Santa Clara*, at p. 316.)

The statutes of limitation "dictate the time period within which a cause of action may be commenced." (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 604; § 312.) But the statutes of limitation "do not begin to run until a cause of action accrues." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.) Generally, a cause of action accrues when it is "complete with all of its elements." (*Ibid*.) Where damages are an element of a cause of action, the claim " 'does not accrue until the damages have been sustained.' " (*Thomson*, at p. 604.) Both breach of contract and breach of the implied covenant of good faith and fair dealing, i.e., bad faith, include a damages element. (*CDF Firefighters v. Maldonado* (2008) 158 Cal.App.4th 1226, 1239 [breach of contract requires "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach"]; *Vu v. California Commerce Club, Inc.* (1997) 58 Cal.App.4th 229, 233 [bad faith claim requires damages be proximately caused by the defendant's breach].)

Under these principles, claims for breach of contract and bad faith regarding disability insurance payments do not accrue until there is a breach and the plaintiff sustains damages. (Cf. *Love*, *supra*, 221 Cal.App.3d at pp. 1151–1152, fn.10 [requiring plaintiff to show benefits were delayed or withheld for breach of implied covenant].) " 'Where benefits are fully and promptly paid, no action lies for breach of the implied covenant—no matter how hostile or egregious the insurer's conduct toward the insured may have been prior to such payment.' " (*Ibid.*, italics omitted.) " '[A]bsent an actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant.' " (*Ibid.*, italics omitted.) In *Erreca v. Western States Life Insurance Co.* (1942) 19 Cal.2d 388 (*Erreca*), the court explained a disability insurance policy is "a continuing contract for periodic

6

installment payments depending upon the insured's continued disability." (*Id.* at p. 402.) Accordingly, an insured "has no cause of action, nor the insurer any liability, except for benefits which have accrued." (*Ibid.*) "This rule makes sense. Plaintiff's right to collect is contingent on: (1) his remaining totally disabled; and (2) his remaining alive." (*Austero v. National Cas. Co.* (1978) 84 Cal.App.3d 1, 24 ["there is no such thing as a 'future' benefit payable under the policy" since it is "legally impossible" for insurer to breach a contract by refusing to pay benefits that have not yet accrued under the terms of the policy "and which may never become due"], italics omitted, overruled on other grounds in *Egan v. Mutual of Omaha Insurance Co.* (1979) 24 Cal.3d 809, 824, fn. 7.)[1]

On the facts here, the elements of Bennett's causes of action were not complete until September 3, 2018, when Ohio National ceased making its monthly disability payments. (*Thomson*, *supra*, 198 Cal.App.4th at p. 604 [" 'when the wrongful act does not result in immediate damage, "the cause of action does not accrue prior to the maturation of perceptible harm" ' "].) Despite indicating in June 2015 that it had determined Bennett's disability was due to sickness rather than injury, Ohio National continued to pay monthly benefits for more than three additional years. Ohio National's determination did not alter or diminish the payments. And the amount of the monthly payment was not affected by Ohio National's determination of the underlying cause — the amount was the same whether the disability was

---

[1] For the first time at oral argument, Ohio National cited *Schwartz v. State Farm Fire & Casualty Co.* (2001) 88 Cal.App.4th 1329. That case concerned an excess insurance policy and did not address whether a cause of action had accrued for statute of limitations purposes; it is inapposite. In the disability insurance context and under the facts of this case, "whether the policy will eventually cover the claim" is an unknown event. (*Id.* at p. 1335.)

caused by injury or sickness. To the extent Ohio National argues their determination did result in damages because the policies only authorized compensation for "one Disability" at a time and different rights arose out of that characterization, we disagree. Bennett only submitted a claim for one disability — a total disability related to his left arm. And Ohio National simply paid a single "total disability" benefit each month without identifying it as a "sickness benefit" or "injury benefit." Thus, until payments ceased, Bennett did not sustain any damages.

Rather than addressing the concept of accrual in contract and bad faith claims, Ohio National argues a "suit may be commenced upon an insured's claim after the insurance company's unconditional denial of liability." (*Neff*, *supra*, 30 Cal.2d at p. 175.) Because its June 2015 letter unequivocally denied lifetime benefits, Ohio National argues Bennett had all the facts necessary to sue.[2] But in *Neff*, the insurer denied the insured's claim that he was totally disabled due to tuberculosis and concluded he was not entitled to disability benefits; he thereby incurred damages when the insurer withheld benefits. (*Id.* at p. 170.) His claim thus accrued, and the statute of limitation barred a lawsuit filed 16 years later seeking unpaid disability benefits. (*Id.* at p. 172.) When the insurer originally denied liability, the insured had all the facts — including damages in the form of withheld benefits — essential to maintaining the causes of action.

Indeed, the other cases cited by Ohio National — all involving insured parties suffering economic loss in conjunction with the unequivocal denial of a benefit that was due (rather than future potential loss, as Ohio National

_____

[2] Ohio National's willingness to entertain Bennett's request that it reconsider its decision does not alter the unequivocal nature of the denial. (*Migliore v. Mid-Century Ins. Co.* (2002) 97 Cal.App.4th 592, 605 ["statement of willingness to reconsider does not render a denial equivocal"].)

conceded at oral argument) — are also distinguishable.[3] (See, e.g., *Vu v. Prudential Property & Casualty Ins. Co.*, *supra*, 26 Cal.4th at pp. 1146–1147 [benefits for earthquake damage withheld where insurer's inspector told insured property damage did not exceed the policy's deductible, and insured did not immediately file a claim]; *Bollinger v. National Fire Insurance* (1944) 25 Cal.2d 399, 402, 404 [insurer denied liability under fire insurance policy because plaintiff was not the sole and unconditional owner of the property], superseded by statute on other grounds as stated in *American Broadcasting Cos. v. Walter Reade-Sterling, Inc.* (1974) 43 Cal.App.3d 401, 406; *Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 138 [denial of claim and withholding benefits for fire damage because insured breached their policy by failing to secure the property following previous losses]; *State Farm Fire &*

---

[3] Notably, the rule — " 'an unconditional denial of liability by the insurer after the insured has incurred loss and made claim under the policy gives rise to an immediate right of action' " — has generally been expressed when addressing the doctrine of estoppel, not whether an action accrues in the absence of any actual damage. (*Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1149.) Specifically, "under some circumstances a misrepresentation or concealment by a defendant might bar it from raising the defense of the statute of limitations." (*Ibid.*) In the context of estoppel, the court in *Neff* determined an insurer's letter stating the insured was not wholly and permanently disabled within the meaning of the disability policy did not constitute a misrepresentation of fact that estopped the insurer from using the statute of limitations defense. (*Neff*, *supra*, 30 Cal.2d at p. 170.) Likewise in *Vu*, the court explained that an insurer may be estopped from asserting a statute of limitations defense if the insured refrained from bringing a timely action based on the reasonable reliance on the insurer's factual misrepresentation about the claim of damages. (*Vu*, at p. 1146.) The court reaffirmed the holding in *Neff* "that a denial of coverage, even if phrased as a 'representation' that the policy does not cover the insured's claim, or words to that effect, offers no grounds for estopping the insurer from raising a statute of limitations defense." (*Vu*, at p. 1152.) Here, Bennett does not make any argument regarding estoppel.

*Casualty Co. v. Superior Court* (1989) 210 Cal.App.3d 604, 607, 609 (*State Farm*) [denial of benefits for structural damage to home].)  Here, in contrast and despite denying Bennett's claim for disability payments based on injury, Ohio National continued to pay Bennett the full amount of his monthly disability benefits until September 2018.

Particularly regarding the breach of contract claim, Bennett did not have all the facts necessary to state a cause of action as of June 2015. Bennett's disability insurance policy was a "continuing contract for periodic installment payments" on a monthly basis contingent on proof of ongoing loss — his continued disability — at regular intervals.  (*Erreca, supra,* 19 Cal.2d at p. 402.)  Even after Ohio National notified Bennett in June 2015 it would terminate his benefits in September 2018, it nonetheless required him to complete a continuing disability statement on a regular basis, updating his current restrictions, limitations, and treatment, and providing a physician's progress statement certifying the same.  Ohio National acknowledged that "*should* [Bennett] remain disabled under the terms of the policies, his disability income benefits will end when he reaches Age 65 (September 3, 2018)."  (Italics added.)  Bennett was not entitled to a lump sum of lifetime benefits under his disability insurance policies.  Thus, he had no breach of contract cause of action for future benefits that *might* accrue after September 3, 2018.  (*Erreca*, at p. 402.)

Relying on *Spellis v. Lawn* (1988) 200 Cal.App.3d 1075, Ohio National suggests sustaining actual damages is immaterial to a cause of action's accrual date.  We disagree.  *Spellis* is not so expansive.  The court noted where " ' "an injury, *although slight*, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once." ' "  (*Id*. at pp. 1079–1081, italics added.)  But

10

some actual damages must be incurred before the statute of limitations runs. The court explained, it " ' "is not material that *all* the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date." ' " (*Id*. at p. 1081, some italics omitted.)  For that reason, the cause of action in *Spellis* accrued when the defendant ex-husband disappeared and "failed to make the first support payment due" — withholding a benefit, thus causing some damage.  (*Id*. at p. 1079.)  We do not read *Spellis* to deviate from the principle that the statute of limitations " 'begins to run upon the occurrence of the last element essential to the cause of action,' " including damages.  (*Ibid*.)

*Flynn*, *supra*, 2 Fed.Appx. 885 — holding plaintiff's claims accrued when insurer denied disability payments rather than when insurer stopped making monthly disability payments — does not alter our conclusion.  (*Id*. at p. 886.)  First, we are not bound by federal appellate decisions.  (*People v. Brooks* (2017) 3 Cal.5th 1, 90.)  Moreover, while federal decisions may have persuasive weight, we find little in *Flynn*.  (*Brooks*, at p. 90.)  The court simply states, with little analysis, that "the statute of limitations began running when [the plaintiff] knew or had reason to know that his claim for disability payments under the accident provision had been denied."  (*Flynn*, at p. 886.)  But both cases *Flynn* cites in support of this premise — *Love* and *State Farm* — involve plaintiffs immediately incurring damages as a result of the insurer's alleged breach.  (*Flynn*, at p. 886; *Love*, *supra*, 221 Cal.App.3d at p. 1143 [insurer denying any coverage and withholding benefits for property damage]; *State Farm*, *supra*, 210 Cal.App.3d at p. 607, 609 [same].)  More importantly, *Flynn* fails to grapple with state law that "actual harm is required before a cause of action accrues," the critical issue here.  (*Lederer v.*

11

*Gursey Schneider LLP* (2018) 22 Cal.App.5th 508, 521, 530–531; *Flynn*, at p. 886.)

We are similarly unpersuaded by the other mostly unreported federal district court cases cited by Ohio National, all of which rely on *Flynn* or case law already distinguished above. (See, e.g., *Finnell v. Equitable Life Assur. Soc'y* (E.D.Cal., Nov. 19, 2007, No. Civ. S-07-0129) 2007 U.S.Dist. Lexis 85355 [relying on the same statements in *Love, supra*, 221 Cal.App.3d at p.1143 and *State Farm, supra*, 210 Cal.App.3d at p. 609, as relied on in *Flynn*]; *Hong v. AXA Equitable Life Ins. Co.* (N.D.Cal., Dec. 4, 2018, No. 18-cv-04039-JST) 2018 U.S.Dist. Lexis 205336 [relying on *State Farm*]; *Finkelstein v. AXA Equitable Life Ins. Co.* (N.D.Cal. 2018) 325 F.Supp.3d 1061, 1067 [relying entirely on *Flynn* for determining when statutes of limitation accrue, and rejecting argument a letter denying disability benefits was not a final decision]; *Albers v. Paul Revere Ins. Grp.* (N.D.Cal., Dec. 23, 2021, No. 20-cv-08674 NC) 2021 U.S.Dist. Lexis 251731 [relying on *Finkelstein* and *Flynn* for statute of limitations discussion], revd. in part by *Albers v. Paul Revere Ins. Group* (9th Cir., June 7, 2023, No. 22-15100) 2023 U.S.App. Lexis 14122 [holding statutes of limitations did not begin to run until the plaintiff sustained damages, which first occurred when her lifetime benefits were withheld].)

Indeed, other unreported federal district court cases have concluded claims accrue when the insurer defendant withholds a benefit under the insurance policy, not when the insurer notifies the insured they will not receive the payment or benefit at issue at a future date. (*Wren v. Transamerica Life Ins. Co.* (C.D.Cal., May 21, 2021, No. EDCV 21-178 JGB (SPx)) 2021 U.S.Dist. Lexis 99103 at p. *11 [until insurer withheld payment, there was a possibility the insurer would issue the benefit under the policy,

"or that the insured would pass away before the cash value bonus became due, mooting the issue"]; *Rizer v. Mut. of Omaha Ins. Co.* (C.D.Cal., Oct. 22, 2012, No. CV 12-7465-GW(FFMx)) 2012 U.S.Dist. Lexis 196327 [noting that the limitations period for breach of contract and bad faith claims do not run until plaintiff incurred damages, when insurer failed to pay lifetime benefits].)  We decline Ohio National's invitation to rely on various out-of-state decisions.

In sum, we conclude Bennett's breach of contract and breach of implied covenant of good faith and fair dealing claims are not barred by the statute of limitations.[4]

## DISPOSITION

The judgment is reversed.  Bennett is to recover his costs on appeal.

---

[4] In light of this conclusion, we need not consider Bennett's additional argument his disability policies extended the statutes of limitation period.

13

_____
Rodríguez, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.


A166049


14

Marin County Superior Court, Hon. Andrew E. Sweet.

Pillsbury & Coleman, Terrence Joseph Coleman and Ryan H. Opgenorth, for Plaintiff and Appellant.

Kantor & Kantor, Glenn R. Kantor and Peter S. Sessions for United Policyholders, as Amicus Curiae on behalf of Plaintiff and Appellant.

Maynard Cooper & Gale, Misty Ann Murray and Ophir Johna, for Defendant and Respondent.

Maynard Nexsen, Misty Ann Murray and Ophir Johna, for Defendant and Respondent.